1   During the latter part of March 2007, during a meeting at
2 the Scruggs Law Firm, the *Jones v. Scruggs* case was being
3 discussed.  Knowing that Timothy R. Balducci and Judge Lackey
4 had been friends for many years, the coconspirators asked
5 Balducci to explore the possibility of influencing the judge.
6   On or about March 28th, 2007, Mr. Balducci met with Judge
7 Lackey and explained to the judge that he would consider it a
8 personal favor if the judge would resolve the lawsuit in favor
9 of Dickie Scruggs and Scruggs Law Firm.  During that same
10 conversation, Balducci expressed a desire to have Judge Lackey
11 become *of counsel* with his law firm upon his retirement, a
12 position which would result in Judge Lackey being paid by the
13 firm simply to allow the use of his name on the firm
14 letterhead.
15   On or about May the 9th, 2007, Timothy R Balducci told
16 Judge Lackey that his relationship with Dick Scruggs was such
17 that they could talk very privately; and that if the judge was
18 inclined to rule in Scruggs' favor, everything would be good.
19 Balducci assured Judge Lackey that the only other person in the
20 world who knew about their discussions was Dickie Scruggs.
21   Later, on September the 21st, 2007, Balducci agreed to pay
22 the judge $40,000 in cash.  Immediately after the meeting with
23 Judge Lackey and agreed on a -- and agreeing on the $40,000
24 figure, Balducci placed a four-minute call to the Scruggs Law
25 Firm.

Exhibit L

1     On September the 27th, 2007, Balducci delivered an initial
2  installment of $20,000 in cash to Judge Henry Lackey in his
3  chambers in Calhoun City, Mississippi.  Balducci then traveled
4  to Oxford, Mississippi, to the Scruggs Law Firm.
5     On October the 18th, 2007, Richard "Dickie" Scruggs had a
6  telephone conversation with Steven A. Patterson wherein they
7  discussed the order.  Scruggs and Patterson was to have --
8  Scruggs asked Patterson to have Balducci leave the order on his
9  desk and pick up a package.  On that same day, Timothy R.
10 Balducci delivered $10,000 in cash to Judge Lackey, picked up
11 an order from Judge Lackey and delivered it to the Scruggs Law
12 Firm and picked up a package containing a $40,000 check.
13    On November the 1st, 2007, Balducci delivered a final
14 $10,000 cash payment to Judge Lackey and obtained an amended
15 order favorable to the Scruggs Law Firm.  Later that day,
16 having been confronted and having agreed to cooperate with the
17 Government, Balducci wore a body recorder and engaged Richard
18 F. "Dickie" Scruggs in recorded conversations regarding the
19 judge's exposure and the need to pay him an additional $10,000.
20    Dickie Scruggs agreed to take care of it and asked
21 Balducci for advice on how to handle that.  Balducci agreed to
22 prepare jury instructions for which he would be paid the
23 $10,000 to reimburse him for the additional payment to the
24 judge.
25    On November the 5th, 2007, Richard F. "Dickie" Scruggs

Exhibit L

1  caused an e-mail to be -- I believe November 2nd caused an
2  e-mail to be sent to Timothy R. Balducci forwarding part of the
3  false documentation to cover the additional $10,000. That same
4  day, Balducci traveled to Oxford and took delivery of the
5  Scruggs Law Firm $10,000 check.
6      Finally, the Government would put on evidence, documentary
7  and testimony, to show that Circuit Court Judge Henry Lackey
8  was an agent of both Lafayette County, Mississippi, and the
9  Administrative Office of Courts; and that the bribe paid to
10 Judge Lackey was in connection with a business transaction or a
11 series of transaction of both Lafayette County and the
12 Administrative Office of Courts for the state of Mississippi.
13     Also, the Government would show that both agencies
14 received, within a one-year period of the offense charged,
15 benefits in excess of $10,000 under a federal program involving
16 a grant, subsidy, loan, guarantee, insurance, or other form of
17 federal assistance.
18     Your Honor, at all times during the course of this
19 investigation, Judge Henry Lackey was acting in an undercover
20 capacity cooperating with the FBI and nothing herein is to
21 imply that Judge Lackey had any complicity in any criminal
22 activity. And with the Court's permission, I'd like to file a
23 copy of this factual basis with the Court.
24     **THE COURT:** Very well. You may do so.
25     (PASSING DOCUMENT TO CLERK)

Exhibit L

1    **THE COURT:** Mr. Scruggs, you have heard the United
2    States Attorney state what evidence he could present against
3    you on this particular charge if the case were to go to trial.
4    Do you agree with the prosecutor's summary of what you did?
5         **MR. KEKER:** Your Honor, could I interrupt to say that
6    much of the prosecutor's summary -- we discussed it -- is based
7    on discovery and information that we have learned during the
8    process of preparing this case. We believe -- and I've
9    discussed with Mr. Scruggs -- that the prosecutors could prove
10   what they say they are proving.
11        Much of that is, as you know, based on testimony of people
12   and under circumstances where Mr. Scruggs was not there and
13   doesn't have firsthand knowledge of it. But we agree that
14   that's what they can prove, and that that's an adequate factual
15   basis for the plea.
16        **THE COURT:** All right. Mr. Scruggs, then, did you do
17   what the prosecutor just said you did, as far as your acts in
18   this charge are concerned?
19        **THE DEFENDANT:** I joined the conspiracy later in the
20   game. It's not exactly as the prosecutor allocuted, in that
21   there was no intent to bribe the judge; it was an intent to
22   earwig the judge, Judge Lackey; and that that -- the earwigging
23   idea was not originated by me or anyone in our firm, although
24   we went along with it, at the beginning of -- sometime in
25   March.

Exhibit L

1     **THE COURT:**  Well --

2     **MR. KEKER:**  But then later -- what about later?  You
3  got to say something about later.

4     **THE DEFENDANT:**  I did join the conspiracy after that.

5     **THE COURT:**  So you agree -- are you telling me that
6  you did join the conspiracy, and you did furnish some money to
7  give to Judge Lackey in return for him issuing an order in your
8  favor in this case?  Is that what you're saying?  Do you
9  disagree with that?

10    **THE DEFENDANT:**  That's what I'm saying.

11    **THE COURT:**  All right.  The Court finds, then, that
12 there is a factual basis for this defendant to plead guilty to
13 this charge.  Richard Scruggs, do you plead guilty or not
14 guilty to Count 1 of this indictment?

15    **THE DEFENDANT:**  I plead guilty, Your Honor.

16    **THE COURT:**  Since you acknowledge that you are in
17 fact guilty as charged in Count 1; you know what your right is
18 to a trial; you know what the maximum possible punishment is;
19 and then the Court's finding you're also voluntarily pleading
20 guilty; the Court will accept your guilty plea and enter a
21 judgment of guilty on your plea.

22    Now, is there any reason, in the opinion of counsel or the
23 defendant, why the Court should not obtain the customary
24 presentence investigative report prior to sentencing?

25    **MR. DAWSON:**  No, Your Honor.

Exhibit L

```
 1         MR. KEKER:  No, Your Honor.
 2         THE COURT:  All right.  You're under bond at this
 3  time, Mr. Scruggs.  If you're allowed to remain under this bond
 4  until sentencing, do you agree to remain bound by it and to
 5  appear before the Court at such times as the Court might direct
 6  in the future?
 7         THE DEFENDANT:  I do, Your Honor.
 8         THE COURT:  All right.  With that understanding,
 9  you'll be allowed to remain under your bond until sentencing,
10  which the Court will not set a specific date on at this time.
11  It will probably be in 30 to 45 days.
12      And also, Mr. Keker, before you leave this morning, let
13  your client talk with the probation officer to start the
14  presentence report.
15         MR. KEKER:  Yes, sir.
16         THE COURT:  All right.
17         MR. KEKER:  And, Your Honor, when the sentencing is
18  set, since I've got to travel, could I consult with somebody
19  about dates?  Because I'm going to be starting a trial
20  probably --
21         THE COURT:  March 18th?
22         MR. KEKER:  Well, no.  It's been moved to April 29th
23  or something like that.
24         THE COURT:  Okay.
25         MR. KEKER:  But I'd just like -- if I can consult so
```

Exhibit L

1  that I can talk to the judge and make sure I can get down here.
2  I'll be in Los Angeles.
3          **THE COURT:**  You'll be given some advance notice.
4          **MR. KEKER:**  All right.  Thank you.
5          **THE COURT:**  All right.  With that understanding, you
6  gentlemen may be excused; and we'll take up the next case.
7          **MR. KEKER:**  Thank you, Your Honor.
8          **MR. DAWSON:**  Thank you, Your Honor.
9               (THE PLEA ENDED AT 10:29 a.m.)

Exhibit L

C E R T I F I C A T E

I, Rita Davis Sisk, RPR, BCR, CSR #1626, Official Court Reporter for the United States District Court, Northern District of Mississippi, was present in court during the foregoing matter and reported said proceedings stenographically.

I further certify that thereafter, I, Rita Davis Sisk, RPR, BCR, CSR #1626, have caused said stenographic notes to be transcribed via computer, and that the foregoing pages are a true and accurate transcription to the best of my ability.

Witness my hand, this 14th day of March, 2008.

*/s/ Rita Davis Sisk*

RITA DAVIS SISK, RPR, BCR, CSR #1626
Official Court Reporter

Exhibit L

```
 1                UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF MISSISSIPPI
 2

 3  UNITED STATES OF AMERICA      .    Docket No. 3:07CR192
                                  .
 4        Plaintiff                .    Oxford, Mississippi
                                  .    January 15, 2008
 5        v.                       .    10:00 a.m.
                                  .
 6  STEVEN A. PATTERSON           .
                                  .
 7        Defendant                .
    . . . . . . . . . . . . . . .
 8


 9
          CHANGE OF PLEA AS TO COUNT ONE OF THE INDICTMENT
10             BEFORE THE HONORABLE NEAL B. BIGGERS
                  U.S. SENIOR DISTRICT JUDGE
11


12  APPEARANCES:

13
    For the Plaintiff:           United States Attorney's Office
14                               Northern District of Mississippi
                                 BY:  BOB NORMAN, ESQ.
15                               900 Jefferson Avenue
                                 Oxford, Mississippi  38655-3608
16
    For the Defendant:           RONALD D. MICHAEL, ESQ.
17                               Attorney at Law
                                 1700 North Second Street
18                               Booneville, Mississippi 38829

19                               HIRAM CHESTER EASTLAND, JR., ESQ.
                                 Eastland Law Offices, PLLC
20                               307 Cotton Street
                                 Greenwood, Mississippi 38930
21                               662-453-1227

22  Court Reporter:              Rita Davis Sisk
                                 911 Jackson Avenue, Room 369
23                               Oxford, Mississippi  38865
                                 (662) 281-3027
24
    Proceedings recorded by mechanical stenography, transcript
25  produced by computer.
```

```
 1        (Call to Order of the Court)
 2        THE COURT:  All right, gentlemen.  We have a matter
 3   set for this morning in U.S. v. Steven A. Patterson.
 4   Mr. Eastland, Mr. Michael, does your client wish to enter a
 5   plea of guilty at this time?
 6        MR. MICHAEL:  Yes, sir, he does.
 7        THE COURT:  All right.  Is the Government ready to
 8   proceed on that?
 9        MR. NORMAN:  Yes, Your Honor.
10        THE COURT:  All right.  Let the defendant come up.
11        (Parties complying.)
12        THE COURT:  Mr. Patterson, I thought I was having a
13   Kafkaesque moment this morning when I read the paper; you'd
14   already entered a plea of guilty.  You know, that's like that
15   novel by Franz Kafka where this guy was charged, he was
16   convicted, and he was executed; and he never went before the
17   Court.  It was like he was a, you know, surreal thing, so --
18   but you haven't been before the Court on a guilty plea, have
19   you?
20        THE DEFENDANT:  No, sir.  The press stays ahead of me
21   all the time.
22        THE COURT:  All right.  And is it your desire to
23   enter a plea of guilty this morning?
24        THE DEFENDANT:  Yes, sir.
25        THE COURT:  All right.  Before accepting your plea,
```

Exhibit M

```
 1  there are a number of questions I'm going to ask you to be sure
 2  you understand what you're doing, what the consequences of what
 3  you're doing are, and that you're voluntarily doing this.  Is
 4  your full name Steven A. Patterson?
 5            THE DEFENDANT:  Yes, sir.
 6            THE COURT:  All right.  And will the court clerk
 7  please swear the defendant.
 8            THE CLERK:  (Oath administered.)
 9            THE DEFENDANT:  I do.
10            THE COURT:  All right.  Mr. Patterson, do you
11  understand now that you're under oath and any answers to these
12  questions are subject to the penalties of perjury if you do not
13  answer them truthfully?
14            THE DEFENDANT:  Yes, sir.
15            THE COURT:  All right.  What is your age,
16  Mr. Patterson?
17            THE DEFENDANT:  Fifty-six.
18            THE COURT:  And what education do you have?
19            THE DEFENDANT:  I have a master's degree and have
20  completed all but dissertation for a Ph.D.
21            THE COURT:  All right.  In what subjects?
22            THE DEFENDANT:  Political science and history.
23            THE COURT:  All right.  Are you presently under the
24  influence of any drugs, medicines, or alcohol?
25            THE DEFENDANT:  No, sir.
```

Exhibit M

```
 1            THE COURT:  You think you fully understand what is
 2   happening here today?
 3            THE DEFENDANT:  Yes, sir.
 4            THE COURT:  Mr. Michael, do you have any question
 5   about your client's ability and competence to enter a plea of
 6   guilty?
 7            MR. MICHAEL:  No, sir.
 8            THE COURT:  All right.  Mr. Norman, do you?
 9            MR. NORMAN:  No, I do not, Your Honor.  Thank you.
10            THE COURT:  All right.  The Court finds that this
11   defendant is competent to enter a plea.  Mr. Patterson, have
12   you had an ample opportunity to discuss this case with your
13   attorney?
14            THE DEFENDANT:  Yes, sir.
15            THE COURT:  Are you satisfied with his representation
16   of you?
17            THE DEFENDANT:  Yes, sir.
18            THE COURT:  Do you believe that he has competently
19   represented your best interests in this case?
20            THE DEFENDANT:  I do.
21            THE COURT:  All right. Now, you've been working for
22   some attorneys for quite some time, and I know that you
23   probably already are aware of these questions I'm about to ask
24   you.  But as far as this record is concerned, it must be a
25   matter of the public record.  Do you understand that under the
```

Exhibit M

```
 1  Constitution and laws of the United States you're entitled to a
 2  trial by jury on this charge?
 3          THE DEFENDANT:  Yes, sir.
 4          THE COURT:  And do you understand that if you wish to
 5  have a trial you would be presumed innocent of this charge, and
 6  the Government would be required to prove you guilty beyond a
 7  reasonable doubt before you could be found guilty?  Are you
 8  aware of that?
 9          THE DEFENDANT:  I am.
10          THE COURT:  Do you understand that in the course of
11  the trial the witnesses for the Government would have to come
12  into court and testify in your presence; that your attorney
13  could cross-examine the witnesses for the Government; he could
14  object to evidence offered by the Government; and he could also
15  call other witnesses to testify in your behalf?  Are you aware
16  of that?
17          THE DEFENDANT:  Yes, sir.
18          THE COURT:  Now, if you plead -- well, let me ask you
19  one other question before we get to that.  Are you aware that
20  if you wanted to testify in your own defense you would have
21  that right to do so, but if you chose not to testify that no
22  inference or suggestion of guilt would be drawn if you chose
23  not to testify?
24          THE DEFENDANT:  Yes, sir.
25          THE COURT:  Now, if you plead guilty today and I
```

Exhibit M

6

```
 1  accept your plea, do you understand that you're going to waive
 2  your right to a trial; there will be no trial; you'll waive
 3  these other rights that I've just discussed with you; and I'm
 4  going to enter a judgment of guilty and sentence you on the
 5  basis of your guilty plea here this morning?  Are you aware of
 6  that?
 7          THE DEFENDANT:  Yes, sir.
 8          THE COURT:  All right.  Also, do you understand that
 9  if you plead guilty here today you're going to waive your right
10  not to incriminate yourself since you may be asked questions
11  about what you did in order to satisfy me that you are guilty
12  as charged?
13          THE DEFENDANT:  Yes, sir.
14          THE COURT:  All right.  Having discussed these rights
15  with you, Mr. Patterson, and you understanding what rights
16  you're waiving, do you still want to go forward with this
17  guilty plea?
18          THE DEFENDANT:  I do.
19          THE COURT:  Have you received a copy of this
20  indictment?
21          THE DEFENDANT:  Yes, sir.
22          THE COURT:  All right.  It charges you with being
23  part of a conspiracy, along with other people, to bribe a
24  public official, a state official.  Are you aware that that's
25  what you're charged with?
```

```
 1            THE DEFENDANT:  Yes, sir.
 2            THE COURT:  And are you aware of what the maximum
 3   penalty is that you could be sentenced to on a plea of guilty
 4   to this charge?
 5            THE DEFENDANT:  I am.
 6            THE COURT:  What is that?
 7            THE DEFENDANT:  Five years, $250,000 fine.
 8            THE COURT:  All right.  Have you discussed with your
 9   attorney any possible defenses that you may have to this
10   charge?
11            THE DEFENDANT:  Yes, sir.
12            THE COURT:  All right.  Now, before you could be
13   found guilty of this charge, if you wished to go to trial --
14   this is a charge under Title 18 of the United States Code,
15   Section 371 and 666 -- the Government would have to prove each
16   of the following elements beyond a reasonable doubt:  There are
17   three elements to this crime.  First element is that you and at
18   least one other person came to an agreement to commit the crime
19   of corruptly offering a thing of value to a person with the
20   intent to influence or reward an agent of a state or local
21   Government in connection with the business of that governmental
22   agency and said corrupt offer involved something of a value of
23   more than $5,000 at a time when the local Government or agency
24   received benefits from the federal government in excess of
25   $10,000 in a one-year period.
```

Exhibit M

```
 1        And that you, in this agreement, devised a scheme to
 2   defraud and to deprive the state of Mississippi of its
 3   intangible rights to honest services from its officials.  They
 4   would have to prove that beyond a reasonable doubt.
 5        Secondly, the Government would have to prove that you knew
 6   that this agreement was unlawful and you joined it willfully
 7   and with the intent to further the unlawful purpose of the
 8   agreement.  And thirdly, they would have to prove that during
 9   the existence of this conspiracy you or at least one of the
10   coconspirators committed at least one of the overt acts
11   described in the indictment in order to carry out the purpose
12   of the conspiracy.
13        The Government would have to prove all of those things
14   beyond a reasonable doubt, Mr. Patterson.  Do you understand
15   that?
16             THE DEFENDANT:  Yes, sir.
17             THE COURT:  Do you think you fully understand this
18   charge?
19             THE DEFENDANT:  Yes, sir.
20             THE COURT:  Do you have any questions at all about
21   it?
22             THE DEFENDANT:  Could I address the Court?
23             THE COURT:  Yes, sir.
24             THE DEFENDANT:  If I could just have the Court's
25   indulgence for just one moment and tell you that I stand here
```

Exhibit M