FD-302a (Rev. 10-6-95)

194A-JN-32324

Continuation of FD-302 of ____TIM BALDUCCI_____ , On 11/01/2007 , Page 22

| | |
|---|---|
| BALDUCCI: | Do you want, I mean, do we, I mean we can do whatever we wanna do if you wanna clean that up any, if you think it... |
| Z SCRUGGS: | I don't know how to clean it up other than, uh, 'cause I don't know what he's trying to say. I mean it's not bad, but I'm not sure what his intent was. |
| BALDUCCI: | I'm not sure either. |
| Z SCRUGGS: | Um, you know, something... |
| BACKSTROM: | Maybe that's it. I mean, that, that's probably it. It just, they should have filed the, a demand for arbitration. |
| BALDUCCI: | That's what I interpreted it when I read it, but I don't know. |
| BACKSTROM: | Which he wouldn't... |
| Z SCRUGGS: | You know... |
| BACKSTROM: | ...which he wouldn't normally do... |
| Z SCRUGGS: | ...something that... |
| BACKSTROM: | ...if the other side's willing to arbitrate (UI) |
| BALDUCCI: | Yeah. |
| Z SCRUGGS: | This might be irrelevant now, but something he oughtta know uh, is that, that this whole thing, of course he hadn't sealed it, uh, but created this problem, is they've been atta, they, you know, they attach all |

Exhibit T

FD-302a (Rev 10-6-95)

194A-JN-32324

Continuation of FD-302 of ____TIM BALDUCCI_____ , On _11/01/2007_ , Page __23__

|  |  |
|---|---|
|  | these crazy ass emails out of context... |
| BALDUCCI: | Sure. |
| Z SCRUGGS: | ...and... |
| BALDUCCI: | Sure. |
| Z SCRUGGS: | ...and they been using some of that, and using it in an action that I'm forbidden to talk about... |
| BALDUCCI: | Well... |
| Z SCRUGGS: | ...that they filed against the Attorney General, STATE FARM is. |
| BALDUCCI: | I see. |
| Z SCRUGGS: | Ok, you, ok. (UI) |
| BALDUCCI: | Yeah. But... |
| Z SCRUGGS: | But. |
| BALDUCCI: | ...I don't... |
| Z SCRUGGS: | Citin' SID's email and, and just one little part of it, and you know, just chicken shit shit. I mean, STATE FARM is usin' uh, JOHNNY JONES' action. and all the shit they're gettin' from it. They're gettin' all these internal emails. |
| BALDUCCI: | Mm-hmm. |
| Z SCRUGGS: | Uh... |
| BALDUCCI: | They're using that as discovery |

Exhibit T

FD-302a (Rev 10-6-95)

194A-JN-32324

Continuation of FD-302 of ___TIM BALDUCCI_____ , On 11/01/2007 , Page 24

|  |  |
|---|---|
|  | in that other matter. |
| Z SCRUGGS: | (UI) |
| BALDUCCI: | Yeah, and they're probably intentionally doing that. |
| Z SCRUGGS: | Fuck yeah. Uh, so, so, so, you know, GRADY might, so these new filings, shit we need to find, that's the thing. We need to find, GRADY mighta just filed, he mighta just put all kinds of crooked shit... |
| BALDUCCI: | Well, you need to... |
| Z SCRUGGS: | ...that's just it. |
| BALDUCCI: | ...that's all I'm saying is you need to look, get uh, not for purposes of getting this order entered, but you probably all just know anyway from your lawyers what GRADY has filed, but um, I mean the, I guess the the issue... |
| Z SCRUGGS: | There is no telling. He might pulled all kinds of crazy ass emails, uh... |
| BACKSTROM: | Well... |
| Z SCRUGGS: | ...trying to (UI) |
| BACKSTROM: | ...I, I think he's, he's probably doing that because he knows that it's causing us pain elsewhere. You know? |
| BALDUCCI: | Yeah. |
| BACKSTROM: | I think... |

Exhibit T

FD-302a (Rev. 10-6-95)

194A-JN-32324

Continuation of FD-302 of _____ TIM BALDUCCI _____ , On 11/01/2007 , Page 25

| Z SCRUGGS: | Of course that's why he's doing it. |
|---|---|
| BALDUCCI: | It's just a, a pressure point. |
| BACKSTROM: | Mm-hmm. |
| Z SCRUGGS: | Of course it is. But there's, there's gotta be something we can do about that. |
| BACKSTROM: | We could move to seal it, but after this is entered... |
| Z SCRUGGS: | Well what about... |
| BACKSTROM: | We...don't wanna gum up the order |
| Z SCRUGGS: | ...well what do, what do we do about him releasing privileged stuff? I mean there's got, I mean we filed the bar complaint? That, that, you know, that, that he's filin' a bunch of stuff that have nothing to do with his dispute against us to try to get out in the public domain. |
| BALDUCCI: | Or you know, or file, I don't know, yeah, motion for sanctions or motion to seal the file. |
| Z SCRUGGS: | I guess what can we file before LACKEY that he would do uh... |
| BACKSTROM: | I would say after we get this order entered, we say we would like this to be sealed, because there's a bunch of shit in here that is just inflammatory and not helpful to us in connection with the other litigation. But |

Exhibit T

FD-302a (Rev 10-6-95)

194A-JN-32324

Continuation of FD-302 of _____TIM BALDUCCI_____, On 11/01/2007 , Page ___26___

|  |  |
|---|---|
|  | I don't think we ask for that now because it's just gonna gum this up, which has been in the works for eight months. You know? (laughs) |
| BALDUCCI: | Yeah. |
| BACKSTROM: | I don't wanna throw him a curve ball. Wow. |
| BALDUCCI: | Yeah. No, I agree. I think the proper way to approach him would be let's get this order entered, and then if you wanna go back to the well later and get it, get an order sealing the file or closing the file or whatever, we can do that later. |
| BACKSTROM: | Mm-hmm. |
| Z SCRUGGS: | It says hereby stayed. So is he gonna keep... |
| BACKSTROM: | Stay, as in compelled to arbitration. |
| Z SCRUGGS: | What does it mean? That action just kinda stays in this court while that goes... |
| BACKSTROM: | That's what, that's what we ask for in the first instance because um, there was good reason for doing it. Don't know what it was, but. |
| Z SCRUGGS: | Well, what if Judge LACKEY retires on the bench and some other asshole gets a hold of it? |
| BACKSTROM: | Well, if he compels it to |

Exhibit T

FD-302a (Rev 10-6-95)

194A-JN-32324

Continuation of FD-302 of ____TIM BALDUCCI_____ , On 11/01/2007 , Page 27

|  | arbitration, then they gotta wait until arbitration is over with. |
|---|---|
| BALDUCCI: | Well do you wanna put, do you wanna put in there that the action's dismissed? Put that it's, that it's compelled to arbitration and the proceedings before this court are dismissed? |
| Z SCRUGGS: | (talking simultaneously) I would (UI) I, that's what I think and thought the court was gonna do. |
| BALDUCCI: | Just dismiss without prejudice? I mean you can't dismiss it with prejudice, but he could dismiss it without prejudice. |
| BACKSTROM: | (UI) |
| Z SCRUGGS: | I think that's what... |
| BALDUCCI: | Instead of staying it. |
| Z SCRUGGS: | ...he would need to do anyway. But I, I, I don't, uh, I might be overlookin' a drawback to doin' That. I don't know what it'd be, but. |
| BALDUCCI: | 'Course. |
| Z SCRUGGS: | I mean LACKEY's uh, uh, fine, but you know who the fuck else is gonna get this thing. |
| BALDUCCI: | Well, That may be what... |
| Z SCRUGGS: | They might (UI) to move oh, judge, oh, we got a new judge and then... |

Exhibit T

FD-302a (Rev. 10-6-95)

194A-JN-32324

Continuation of FD-302 of ___TIM BALDUCCI_____ , On _11/01/2007_ , Page __28__

| BALDUCCI: | Yeah. |
|---|---|
| Z SCRUGGS: | ...who knows who is. |
| BALDUCCI: | I don't know that I'll have the stroke with the next one. |
| BACKSTROM: | Mm-hmm. |
| Z SCRUGGS: | Well, shit you know, this is the proper thing to do, uh, uh, it, it's just uh, you know, (UI) it's just so unprofessional, uh, what these guys have been up to, and unethical. Attaching all these uh, things That they're ciphering through and God knows what GRADY's talkin' to STATE FARM lawyers about. Hey, make this, you know, you got so and so, make that, buy that case we can...get all of it. |
| BACKSTROM: | Uh, yeah, I don't know, I guess a dismissal would be better than a, a staying. Um, but I think the staying gonna be fine if he's compelling it to arbitration because then it gets stuck in arbitration and you can't do anything with it after that. |
| Z SCRUGGS: | Well, other than... |
| BACKSTROM: | (UI) |
| Z SCRUGGS: | ...say ok, fine we'll go to arbitration and what, whatever claims we don't think or can construe later weren't done in arbitration are coming back to this court, and then whoever the |

Exhibit T

FD-302a (Rev. 10-6-95)

194A-JN-32324

Continuation of FD-302 of ____TIM BALDUCCI_____ , On _11/01/2007_ , Page __29__

| | |
|---|---|
| | fuck the judge is, you know? I don't know. |
| BALDUCCI: | Mm-hmm. |
| Z SCRUGGS: | And, and, 'cause he stayed it, there was no statutes issue. |
| BALDUCCI: | Right. |
| UF4: | TRACY LOTT (phonetic) is on the phone for you? (UI) |
| Z SCRUGGS: | TRACY LOTT? |
| UF4: | Mm-hmm. |
| Z SCRUGGS: | Uh... |
| UF4: | (UI) |
| Z SCRUGGS: | Is it TRISHA LOTT? |
| UF4: | Mmm...she said TRACY. It could be TRISHA, but. |
| Z SCRUGGS: | I, I don't know a TRACY LOTT, and, and the daughter's TYLER, but... |
| UF4: | You want us to take a message? |
| Z SCRUGGS: | Yeah, just, just tell her I'm not here and try to get a, make sure who their name is and their number if you don't mind. |
| UF4: | Ok. |
| Z SCRUGGS: | Thanks. I don't wanna answer a TRACY LOTT who I don't know anything about by off chances. |
| BALDUCCI: | (laughs) Yeah, could be. |

Exhibit T

FD-302a (Rev. 10-6-95)

194A-JN-32324

Continuation of FD-302 of ___TIM BALDUCCI_____ On 11/01/2007 Page 30

| | |
|---|---|
| Z SCRUGGS: | It could be..(UI) |
| BALDUCCI: | God only knows. (pause) Um, the other piece of this puzzle I hadn't told you yet is uh, get it how you want it because I've got to uh, I've gotta go back for another delivery of uh, another bushel of sweet potatoes down there. So. Because of all of this that has come up. |
| BACKSTROM: | Mm hmm. |
| BALDUCCI: | So get it right. Get it how you want it 'cause we're payin' for it to get it done right. |
| BACKSTROM: | For the reasons set forth above all matters in this cause |
| (door opens - ZACH leaving) | including all claims hereby stayed. Plaintiffs are hereby compelled to submit all such claims to binding arbitration. That, you know, that's good enough to me. I wouldn't change anything. |
| (door closes - ZACH left) | I'd just get-get er done. |
| BALDUCCI: | Alright. |
| BACKSTROM: | 'Cause any, any change I would expect is going to have to be hands rung over it and thought about and things like that, so. I mean, I'll take, you know, ninety-nine percent of what we want. |
| BALDUCCI: | Yeah, ok. |

Exhibit T



THE BRIBE

Dickie Scruggs on his property on the Gulf, near Alys Home. After Hurricane Katrina struck, he launched another crusade—against the insurance industry. Photograph by Brian Smale

The most notorious football rally at the University of Mississippi last year occurred four days after the season ended, when the school's chancellor, Robert Khayat, summoned Ed Orgeron, a new head football coach. A throng of overflow crowd at the school's Center for the Performing Arts welcomed Houston Nutt, whom the university had somehow managed to poach from the University of Arkansas. Razorbacks had defected Ole Miss, at the university it indicated.

For Ole Miss, a relatively small public school in a poor state, a new coach—half a million-dollar deal was a major coup. Ole Miss could afford an emphatic splurge, and some assumed the hand of a private benefactor. Khayat acknowledged as much in his opening remarks, pronouncing himself "profoundly grateful to Dick Scruggs," whom he had been used as a thumbs during negotiations. Scruggs was arguably the most successful trial lawyer in America, and a deeply interested Ole Miss football fan. Dickie, as he was called, even by those who'd never met him, had no idea where the intervention, for him about where the school was looking. Houston Nutt nevertheless did not hesitate. Dickie Scruggs, the man who took down Big Tobacco without conducting a single trial, quietly had something to do with it.

For Robert Khayat was grateful to Scruggs for other reasons, too. Khayat became chancellor in 1995, with the mission of liberating Ole Miss from its past—a perilous ambition at a place where the past was so insistently present. There were plenty of black people on campus, but they were staring for the immaculate green—the magnolia-lined Grove—serving as the backdrop to the state's white establishment in their Greek-revival sorority and fraternity houses. The school indicated was itself a relic from the future of a plantation. Students dressed for games as if going to church, and cheerleaders roamed bundles of furled flags into the tumultuous face of each game; as the band played a rousing version of "Dixie."

When, in 1962, the federal government forced the enrollment of the first black students at the university, James Meredith, Ole Miss became a national symbol of white Southern resistance to the civil-rights movement. The U.S. marshals accompanying Meredith were pelted with rocks and bottles, and, eventually, were targets of sniper fire. Two people were killed, and more than three hundred injured, before federal troops ended the riot. Jack Bass and W. Scott Haskins recounted the episode in their Kennedy Justice Department called the episode "the final gap of the Civil War."

By the time Khayat became chancellor, the school's endowment and enrollment had seriously declined. Khayat generously raised funds, cultivated alumni support, and worked to address the academic reputation, and went to work on the school's image. Ole Miss had largely disappeared from the football ranks, "Dixie" was downplayed, and the school's mascot—Colonel Reb—was banished from the playing field. It still draws fans under Khayat, the school endowment has quintupled, enrollment has increased to about fifty per cent, and, along with the real statue of our Confederacy, a bronze sculpture commemorating James Meredith now holds an honored place on the campus.

The transformation at Ole Miss aroused a good deal of opposition, and would not have happened without support from key alumni, among the most important of whom was Dickie Scruggs. Although he is the brother-in-law of the former Republican Senator Trent Lott—the two married sisters—Scruggs, who is sixty-one, is a staunch Democrat, and a fervent and generous supporter of the school. A few years after Scruggs hit the biggest jackpot in American legal history, in 1997, raising what he could do for the university, Khayat, who is seventy, had known Scruggs for most of his life. He had been his twelfth-grade homeroom teacher at Pascagoula High School, and later, at Ole Miss Law School when Scruggs was a student there. The Chancellor told Scruggs that the faculty wanted to set up the College of Liberal Arts were painfully low, and Scruggs immediately made a twenty-five-million-dollar pledge. After his tobacco victory, in 1997, he eased his own fortune at a trial effort, or Ole Miss alumnus David Nutt, to expand his own.

THE NEW YORKER, MAY 19, 2008    45

Exhibit U



Exhibit U

## A PRIMER

Exhibit U



"I could be an animal-rights activist, but I have allergies."



"I broke up with another one. Do you want her picture, too?"

Exhibit U

VLAD the IMPLER

SKETCHBOOK BY ROZ CHAST

Exhibit U

"Remember when they couldn't do this sort of thing to us?"

Exhibit U



"Why, Jimmy, I just knew I wanted Grand Theft Auto Number Four!"

Exhibit U

PSR Filed in Original Proceeding UNDER SEAL
Docket No. 3:07CR00192-002

Exhibit V

1

```
 1                   UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF MISSISSIPPI
 2
   UNITED STATES OF AMERICA        .        Cause No. 3:07CR192
 3
            Plaintiff              .        Oxford, Mississippi
 4                                          June 27, 2008
            v.                     .        2:00 p.m.
 5
   SIDNEY A. BACKSTROM             .
 6
            Defendant             .
 7 .  .  .  .  .  .  .  .  .  .  .  .  .  .

 8          SENTENCING AS TO COUNT 1 OF THE INDICTMENT
               BEFORE THE HONORABLE NEAL B. BIGGERS
 9                   U.S. SENIOR DISTRICT JUDGE
   APPEARANCES:
10
   For the Government:        United States Attorney's Office
11                            Northern District of Mississippi
                              BY:  THOMAS W. DAWSON, ESQ.
12                            BY:  ROBERT H. NORMAN, ESQ.
                              BY:  DAVID A. SANDERS, ESQ.
13                            900 Jefferson Avenue
                              Oxford, Mississippi  38655-3608
14
   For the Defendant
15     , Sidney A. Backstrom:
                              FRANK W. TRAPP, ESQ.
16                            Phelps Dunbar
                              111 East Capitol Street, Suite 600
17                            Post Office Box 23066
                              Jackson, Mississippi 39225-3066
18                            601-352-2300

19                            J. RHEA TANNEHILL, JR., ESQ.
                              Tannehill & Carmean, PLLC
20                            400 South Lamar Boulevard, Suite C
                              Post Office Box 1383
21                            Oxford, Mississippi 38655
                              662-236-9996
22
   Court Reporter:           Rita Davis Sisk
23                           911 Jackson Avenue, Room 369
                             Oxford, Mississippi  38865
24                           (662) 416-2038

25 Proceedings recorded by mechanical stenography, transcript
   produced by computer.
```

Exhibit W

1  who are suppose to be role models to law students and to other

2  students generally, young people, as to how they should conduct

3  themselves.   And I'm glad to see that Mr. Backstrom saying that

4  he hopes his prison sentence will be a message to other people

5  as to what might happen to them and what should happen to them

6  if they violate the oaths as a member of the Bar and as an

7  officer of the Court.

8       The Court has been impressed by Mr. Backstrom's state of

9  mind regarding how he feels about this charge.   I remember when

10 you pled guilty, Mr. Backstrom; you were very remorseful at

11 that time.   I cannot say that I have seen that type of remorse

12 with some of your co-defendants.   So I take that into

13 consideration by -- from my observation of you.

14      There's one thing that I have not seen from you that I

15 thought I would see, and that is some kind of cooperation on

16 your part with the Government.   They gave you a plea agreement

17 that provided you would have -- your sentence would be capped

18 at half of Mr. Scruggs' sentence, and that was based on assumed

19 cooperation from you.   I understand there was a proffer of some

20 kind of cooperation before the plea agreement was made, but

21 there has been no cooperation.

22           MR. TRAPP:   I think we've done what we've been asked

23 to do, Your Honor.

24           THE COURT:   You think so?

25           MR. TRAPP:   Yes, sir.

1          **THE COURT:**  Well, I haven't heard any testimony or

2   any proffer from the Government about his knowledge of the

3   others' activities, especially one co-defendant I was

4   interested in.

5          **MR. TRAPP:**  There has not been any knowledge of that

6   that he has, Your Honor.

7          **THE COURT:**  Well -- all right.  Well, I -- that's

8   what I -- rose in my -- the question rose in my mind from what

9   I've heard, and what I question about what he knew about the

10  other things.  But based on that, I -- as I say, I will accept

11  the plea agreement.

12       And I know it's a -- it's a difficult thing for you,

13  Mr. Backstrom.  I know about your family.  I know how well they

14  are liked and respected by your neighbors.  I've had letters

15  from them, also.  And -- but, as Mr. Scruggs said this morning,

16  the last thing he said was that he hopes that he will be a

17  better man when this is over.  And I hope you can be also.

18       Pursuant to the Sentencing Reform Act, it is the judgment

19  of the Court that the defendant, Sidney A. Backstrom, be

20  committed to the custody of the Bureau of Prisons to be

21  imprisoned for a term of 28 months on Count 1 of the

22  indictment.  Upon release from imprisonment, he shall be placed

23  on supervised release for a term of three years.

24       There's certain strict conditions of conduct that you must

25  abide by, Mr. Backstrom, following your release from custody.

Exhibit W

DAILY COPY                                                           1

```
 1                    UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF MISSISSIPPI
 2
    UNITED STATES OF AMERICA          .        Cause No. 3:07CR192
 3
            Plaintiff                 .
                                               Oxford, Mississippi
 4                                    .        March 21, 2008
            v.                                 10:11 a.m.
 5                                    .
    DAVID ZACHARY SCRUGGS             .
 6
            Defendant                 .
 7   .   .   .   .   .   .   .   .   .   .   .   .

 8          CHANGE OF PLEA AS TO COUNT 1 OF THE INFORMATION
                  BEFORE THE HONORABLE NEAL B. BIGGERS
 9                    U.S. SENIOR DISTRICT JUDGE

10   APPEARANCES:

11   For the Government:          United States Attorney's Office
                                  Northern District of Mississippi
12                                BY:  THOMAS W. DAWSON, ESQ.
                                  BY:  ROBERT H. NORMAN, ESQ.
13                                BY:  DAVID A. SANDERS, ESQ.
                                  900 Jefferson Avenue
14                                Oxford, Mississippi  38655-3608

15   For the Defendant:          TODD P. GRAVES, ESQ.
                                  NATHAN GARRETT, ESQ.
16                                Graves, Bartle & Marcus, LLC
                                  1100 Main Street
17                                Suite 2600
                                  Kansas City, Missouri 64105
18                                816-256-3173

19                                MICHAEL C. MOORE, ESQ.
                                  Michael Moore Law Firm, LLC
20                                10 Canebrake Boulevard, Suite 150
                                  Post Office Box 321048
21                                Flowood, Mississippi 39232

22   Court Reporter:             Rita Davis Sisk
                                  911 Jackson Avenue, Room 369
23                                Oxford, Mississippi  38865
                                  (662) 281-3027
24

    Proceedings recorded by mechanical stenography, transcript
25   produced by computer.
```

EXHIBIT

Exhibit X

1      (Call to Order of the Court)

2           THE COURT:  All right, gentlemen.  In the case of the

3  U.S. v. David Zachary Scruggs, is there an announcement to be

4  made in that case?

5           MR. SANDERS:  Yes, sir, Your Honor.  The Government

6  would like to announce that the defendant has agreed to -- with

7  the Government to enter into a plea agreement in this matter.

8           THE COURT:  All right.  What -- so what is that -- is

9  the defendant ready to enter a plea?

10           MR. SANDERS:  Yes, sir, Your Honor.

11           THE COURT:  All right.  Mr. Graves?

12           MR. GRAVES:  Yes, Your Honor.

13           THE COURT:  All right.  Let him come up.

14      (Parties complying.)

15           THE COURT:  All right.  Mr. Scruggs, is your true

16  name David Zachary Scruggs?

17           THE DEFENDANT:  Yes, Your Honor.

18           THE COURT:  Now, the Court is informed that you wish

19  to change the plea that you previously entered to a plea of

20  guilty to another charge; is that correct?

21           THE DEFENDANT:  Yes, Your Honor.

22           THE COURT:  All right.  According to this document

23  that's been furnished to me just this morning, this plea

24  agreement calls for you to waive indictment and to plead guilty

25  under oath to a one-count information, which charges the

Exhibit X

3

1   misprision of a felony.  Is that your intention?

2           THE DEFENDANT:  Yes, sir, Your Honor.

3           THE COURT:  All right.  Do you understand that you

4   have not been indicted on the crime of misprision of a felony;

5   and you have the right, under the law, to have a grand jury to

6   hear the evidence and decide whether you should be officially

7   charged with misprision of a felony?

8           THE DEFENDANT:  I do, Your Honor.

9           THE COURT:  You want to waive that right?

10           THE DEFENDANT:  Yes, sir, Your Honor.

11           THE COURT:  All right.  Have you signed the waiver of

12   indictment?  Has it been signed yet?

13           MR. GRAVES:  Not yet, Your Honor.

14           THE COURT:  All right.  Well, have you got that --

15   furnish that to the defendant.

16           MR. SANDERS:  (Passing document.)

17           THE CLERK:  (Passing document to the Court.)

18           THE COURT:  Thank you.  All right.  Here you go.  Put

19   that in the record.

20      All right.  Before accepting your guilty plea, there are a

21   number of questions I will ask you to assure that it is a valid

22   plea.  If you do not understand any of these questions or at

23   any time you wish to consult with your attorneys, you may let

24   me know.

25      The clerk will please swear the defendant.

Exhibit X

DAILY COPY

4

1              THE CLERK:   (Oath administered.)

2              THE DEFENDANT:   I do.

3              THE COURT:   All right.   Mr. Scruggs, do you

4    understand now that you are under oath and any answers to my

5    questions will be subject to the penalties of perjury if you do

6    not answer them truthfully?

7              THE DEFENDANT:   I do, Your Honor.

8              THE COURT:   All right.   What is your age?

9              THE DEFENDANT:   Thirty-three years old.

10             THE COURT:   And how far did you -- you have a

11   bachelor degree and a law degree?

12             THE DEFENDANT:   Yes, sir.

13             THE COURT:   Are you presently under the influence of

14   any drugs, medicines, or alcohol?

15             THE DEFENDANT:   No, Your Honor.

16             THE COURT:   You think you fully understand what is

17   happening here today?

18             THE DEFENDANT:   Yes, Your Honor.

19             THE COURT:   All right.   Mr. Graves, Mr. Moore, do

20   either of you have any doubt as to the defendant's competence

21   to enter a plea at this time?

22             MR. GRAVES:   No, sir.

23             MR. MOORE:   No, sir.

24             THE COURT:   The Court finds that this defendant is

25   competent to enter a plea.   Have you had an ample opportunity

Exhibit X

5

1   to discuss this case with your attorneys?

2           THE DEFENDANT:   I have, Your Honor.

3           THE COURT:   Are you satisfied with your attorneys'

4   representation of you?

5           THE DEFENDANT:   I am, Your Honor.

6           THE COURT:   Do you believe that they have competently

7   represented your best interests in this case?

8           THE DEFENDANT:   I do, Your Honor.

9           THE COURT:   Do you understand that under the

10  Constitution and laws of the United States that you are

11  entitled to a trial by a jury on this charge?

12          THE DEFENDANT:   Yes, sir.

13          THE COURT:   And do you understand that if you wish to

14  have a trial the -- you would be presumed to be innocent of

15  this charge and the Government would be required to prove you

16  guilty beyond a reasonable doubt before you could be found

17  guilty?  Are you aware of that?

18          THE DEFENDANT:   I am, Your Honor.

19          THE COURT:   And do you understand that in the course

20  of a trial the witnesses for the Government would have to come

21  into Court and testify in your presence; that your attorney

22  could cross-examine the witnesses for the Government; they

23  could object to evidence offered by the Government and offer

24  other evidence in your behalf?  Are you aware of that?

25          THE DEFENDANT:   Yes, sir, Your Honor.

Exhibit X

6

1        THE COURT:  Do you further understand that if you

2   wish to testify in your own defense you have that right, but if

3   you chose not to testify no inference or suggestion of guilt

4   would be drawn by the fact that you did not testify?  Are you

5   aware of that?

6        THE DEFENDANT:  I am, Your Honor.

7        THE COURT:  Now, if you plead guilty here today and I

8   accept your plea, do you understand that you're going to waive

9   your right to a trial; the other rights I've just discussed

10  with you; there will be no trial; and I will enter a judgment

11  of guilty and sentence you on the basis of your guilty plea

12  after considering a presentence report?

13       THE DEFENDANT:  Yes, sir, Your Honor.

14       THE COURT:  If you plead guilty here today, do you

15  also understand that you will also waive your right not to

16  incriminate yourself, which you're guaranteed by the Fifth

17  Amendment of the Constitution, because I will ask you questions

18  about what you did in order to satisfy myself that you are

19  guilty as charged?  Do you understand that?

20       THE DEFENDANT:  I do, Your Honor.

21       THE COURT:  All right.  Now, by your knowing what

22  you're waiving by pleading guilty at this time, do you still

23  want to go forward with this guilty plea?

24       THE DEFENDANT:  I do, Your Honor.

25       THE COURT:  Have you received a copy of this

Exhibit X

1   information?

2              THE DEFENDANT:   I have, Your Honor.

3              THE COURT:   It charges you with having knowledge of

4   the actual commission of a felony.   You concealed it and did

5   not make known the same to some judge or other person in

6   authority under the United States law in violation of Title 18,

7   United States Code, Section IV.   That's what you're charged

8   with.   Have you discussed with your attorney this charge and

9   any defense that you might have to it?

10             THE DEFENDANT:   I have, Your Honor.

11             THE COURT:   All right.   Now, before you could be

12  found guilty of this charge, the Government would have

13  to present evidence to the Court, to the jury, that four

14  elements occurred.   First, that a felony, a federal felony, was

15  committed.   Secondly, that you had knowledge of the commission

16  of that felony.   Third, that you failed to notify an authority

17  as soon as possible.   And fourth, that you committed an act, as

18  charged, to conceal the crime.

19      Are you aware that the Government would have to prove all

20  four of those elements beyond a reasonable doubt before you

21  could be found guilty?

22             THE DEFENDANT:   I am, Your Honor.

23             THE COURT:   Do you have any questions about this

24  charge?

25             THE DEFENDANT:   No, sir, Your Honor.

Exhibit X

1        THE COURT:  Do you understand the maximum possible

2  penalty under the law for this crime?

3        THE DEFENDANT:  Yes, sir, Your Honor.

4        THE COURT:  What's your understanding of it?

5        THE DEFENDANT:  Three years.

6        THE COURT:  All right.  And also a $250,000 fine.

7        THE DEFENDANT:  That's correct, Your Honor.

8        THE COURT:  And supervised release of up to a year.

9  Are you aware of that?

10        THE DEFENDANT:  Yes, sir.

11        THE COURT:  Has anyone threatened you or forced you

12  to plead guilty to this charge?

13        THE DEFENDANT:  No, sir.

14        THE COURT:  All right.  Counsel have advised the

15  Court there is a plea agreement entered into.  What is the

16  substance of that plea agreement, Mr. Sanders?

17        MR. SANDERS:  Yes, sir.  The defendant agreed to

18  waive indictment and plead guilty under oath to a one-count

19  information charging misprision of a felony.  The United States

20  agrees not to charge the defendant with any other offenses

21  arising from or related to the above charges and agrees to

22  dismiss the original indictment upon conclusion of sentencing.

23     After being fully advised of all the facts and

24  circumstances of the defendant's involvement, the Government

25  will recommend a probated sentence.  However, there is no

Exhibit X

1  agreement as to the sentence to be imposed, which will be in

2  the sole discretion of the Court subject to the applicable

3  Federal Sentencing Guidelines which have been explained to the

4  defendant by his attorney.  And both parties reserve their

5  right to speak at sentencing.

6      This agreement does not bind any prosecuting authority of

7  any state or any other federal district, nor does it bind the

8  Attorney General of the United States with regard to any

9  matter, criminal or civil, involving the federal tax laws.

10     The defendant is aware that if he violates this agreement

11 all statements made pursuant hereto will be admissible against

12 him.  He hereby waives the provisions of Rule 11(f) of the

13 Federal Rules of Criminal Procedure and Rule 410 of the Federal

14 Rules of Evidence.  He may also, in that event, be prosecuted

15 for all federal offenses, including perjury and false

16 statements related to this agreement.

17     Apart from being advised of the advisory nature of the

18 United States Sentencing Guidelines, no promise or

19 representation whatsoever has been made to the defendant.  This

20 agreement fully reflects all the promises, agreements, and

21 understandings between the defendant and the United States

22 Attorney.

23     His agreement is knowing, free, and voluntary, not the

24 product of force, threat, or coercion.  He is pleading guilty

25 because the defendant is in fact guilty of the charges.  And

Exhibit X

1    that's essentially the substance of the plea agreement.

2          **THE COURT:**  All right.  Mr. Scruggs, you heard

3    Mr. Sanders state his understanding of the agreement that you

4    entered into with the Government.  Did he accurately state it

5    as you understand it to be?

6          **THE DEFENDANT:**  He did, Your Honor.

7          **THE COURT:**  Mr. Graves --

8          **MR. GRAVES:**  Yes, sir.

9          **THE COURT:**  -- Mr. Garrett, is it the

10   understanding -- as you understand it to be?  Mr. Moore?

11         **MR. GARRETT:**  Yes, Your Honor.

12         **MR. MOORE:**  Yes, Your Honor.

13         **THE COURT:**  All right.  Has anyone made any promise

14   to you in addition to this plea agreement to cause you to enter

15   a plea of guilty?

16         **THE DEFENDANT:**  No, sir, Your Honor.

17         **THE COURT:**  All right.  You understand, Mr. Scruggs,

18   that any recommendation of sentence which the plea agreement

19   contains is not binding on this Court; and the Court can

20   sentence you up to the maximum three years which the law

21   provides for this?

22         **THE DEFENDANT:**  Yes, sir, Your Honor.

23         **THE COURT:**  All right.  Has anyone made any

24   prediction what sentence you would receive?

25         **THE DEFENDANT:**  No, sir, Your Honor.

Exhibit X

1      THE COURT:  Did you, as charged in Count 1 of this

2  indictment, have knowledge of a felony, a federal felony,

3  having been committed and conceal it, not report it to the

4  authorities as required by law?

5      THE DEFENDANT:  I did, Your Honor.

6      THE COURT:  All right.  Mr. Sanders, what evidence

7  would the Government be able to present as to this charge?

8      MR. SANDERS:  Yes, sir.  Should the present action go

9  to trial, the Government would show that on or about March 15th

10  of 2007 the defendant, along with Richard Scruggs and Sid

11  Backstrom, met with Steve Patterson and Tim Balducci and,

12  during this meeting, discussed Balducci's relationship with

13  Circuit Judge Henry Lackey.

14      At that time, Judge Lackey was presiding over a civil

15  matter styled *Jones v. Scruggs*.  Also at that meeting, it was

16  decided that, because of his close relationship with Judge

17  Lackey, Tim Balducci would speak to the judge in an ex parte

18  manner and ask him to rule in favor of the defendants.

19  Everyone was aware that Balducci had not made an official entry

20  of appearance on behalf of the Scruggs Law Firm to represent

21  them in the matter.

22      Shortly thereafter, Balducci met with Judge Lackey and

23  discussed the *Jones v. Scruggs* lawsuit.  Judge Lackey

24  subsequently contacted the United States Attorney's Office and

25  began working with the Government in an undercover capacity.

Exhibit X

1        Over the course of the next few months, Balducci met with

2    Judge Lackey on several more occasions, many of which were

3    recorded.  And on October 18, Judge Lackey gave Balducci a

4    signed order ruling in favor of the defendants.  Balducci then

5    drove the order from Judge Lackey's chambers in Calhoun City to

6    the Scruggs Law Firm in Oxford and left the order with the

7    defendant Zach Scruggs.

8        At this time, Scruggs was aware that the order would send

9    the Jones v. Scruggs matter to arbitration; and he was aware

10   that the plaintiffs were unaware of both Balducci's involvement

11   and that Judge Lackey's ruling was based in part on something

12   other than the merits of lawsuit, that is, Balducci's personal

13   relationship with Judge Lackey.

14       Scruggs was also aware that such an act deprived the state

15   of Mississippi of its intangible right to the honest services

16   of Judge Henry Lackey performed free from deceit, bias,

17   self-dealing, and concealment.

18       By November 1st, 2007, the order Balducci delivered to

19   Scruggs on October 18th had not yet been entered.  On

20   November 1st, Balducci returned to the Scruggs Law Firm with

21   another order and, on this date, met with Zach Scruggs and Sid

22   Backstrom in Backstrom's office.

23       During this meeting, Balducci explained to both Scruggs

24   and Backstrom that the order he left with Scruggs on October

25   18th had not been entered because before the judge had time to

Exhibit X

1  file it the plaintiffs filed additional motions; and the judge

2  believed he needed to draft an order addressing these

3  additional filings.

4       Balducci, by this time, was cooperating with the United

5  States and was wearing an audio recorder.  Both Scruggs and

6  Backstrom spent time examining the order and discussing its

7  contents.  After receiving and examining the order, Scruggs

8  failed to inform the firm's counsel of record of the manner in

9  which the order had been obtained, thereby concealing this fact

10 from the plaintiffs, whom the firm's counsel would have been

11 bound to inform.

12      While it is not necessary that the defendant knew of this

13 fact, the Government would show that also on November 1st an

14 e-mail was sent via wire transmission in interstate commerce

15 from the Scruggs Law Firm to Tim Balducci containing documents

16 related to the order sending this case to arbitration.

17      Finally, the Government would show that the

18 above-described criminal activity took place in Lafayette

19 County, Mississippi, which is in the Northern Judicial District

20 of Mississippi.

21      **THE COURT:**  Mr. Scruggs, did you do what the

22 prosecutor just described you as having done?

23      **THE DEFENDANT:**  I did, Your Honor.

24      **THE COURT:**  The Court finds there is a factual basis

25 for this defendant to plead guilty to this charge.  Do you

Exhibit X

1  plead guilty or not guilty to Count 1 of this information?

2          THE DEFENDANT:  I plead guilty, Your Honor.

3          THE COURT:  Since you acknowledge that you are

4  guilty; you know what your right is to a trial; you know what

5  the maximum possible punishment is; and then the Court's

6  finding you're voluntarily pleading guilty; the Court will

7  accept your guilty plea and enter a judgment of guilty on your

8  plea.

9          All right, now, I see from this plea agreement -- from

10  what counsel said, this plea agreement does not require the

11  defendant to cooperate with the Government on any other cases,

12  testify in any other cases?

13          MR. SANDERS:  Yes, sir, Your Honor.

14          THE COURT:  That's what it calls for?

15          MR. SANDERS:  Yes, sir.

16          THE COURT:  Do you have knowledge that he has

17  information on other cases?

18          MR. SANDERS:  We have no knowledge that he has any

19  information on other cases at this time, Your Honor.

20          THE COURT:  All right.  Of course, this is quite a

21  difference of charges from six felony counts involving

22  conspiracy and the related counts down to one count of

23  misprision of a felony.  If the prosecution thinks that's what

24  they want to charge him with now, the Court will -- that's the

25  prosecution's call.

Exhibit X

1      And the Court will consider this case, consider the facts

2  of the case, have a presentence report conducted, and determine

3  what would be the proper sentence under this particular charge

4  at a later date.

5      Put the defendant in touch with the probation officer

6  before you leave here today, and they'll start the presentence

7  report.  Anything else?

8          **MR. GRAVES:**  Your Honor, could the defendant speak

9  briefly?

10          **THE COURT:**  Pardon?

11          **MR. GRAVES:**  Could Mr. Scruggs speak briefly to the

12 Court?

13          **THE COURT:**  Yes.

14          **THE DEFENDANT:**  Thank you, Your Honor.  This is my

15 first time to be before Your Honor in Court, and no one is

16 sorrier than I that it's under these circumstances.  I'd like

17 to start out by telling the Court, and the public, that I had

18 no knowledge that Tim Balducci bribed Judge Lackey in

19 connection with this arbitration order.  I didn't conspire to

20 bribe Judge Lackey in connection with an arbitration order, and

21 I would have stopped it had I known.

22     However, I did have some knowledge that Tim Balducci had a

23 close personal relationship with Judge Lackey, and that he used

24 that personal relationship to have improper ex parte contacts

25 with the judge regarding the order.  Such improper contacts, if

Exhibit X

1  left unchecked, can -- and in this case did -- deprive the

2  people of the state of Mississippi of fair and honest services.

3       As a member of the Mississippi Bar, and as an officer of

4  the Court, I had a duty to prevent such contacts from occurring

5  and to report them; and I failed to do so.  I am truly and

6  humbly sorry for that; and I apologize to the Court, to the

7  legal profession I love so deeply, and to the people of the

8  state of Mississippi.

9       I'm here today to accept full responsibility for my acts

10 and prepared to accept the full consequences, both from this

11 Court and the Mississippi Bar.  We, as members of the Bar, have

12 high standards we have to live up to.  And it's not just enough

13 that we not engage in ex parte contact or unethical contact; we

14 have a duty to prevent others from doing so.  And I failed to

15 do so in this particular case.

16      I hope that the profession and the Mississippi Bar will

17 learn from and benefit from my failure, and that it will -- my

18 actions here today will improve the Mississippi Bar Association

19 for the better.  And may God save this Court and our honorable

20 profession.  Thank you, Your Honor.

21           THE COURT:  All right, Mr. Scruggs.  Of course, the

22 legal profession that you say you love so much, you will not be

23 a part of it the rest of your life.  You understand that?

24           THE DEFENDANT:  Yes, Your Honor.

25           THE COURT:  Okay.  The Court will accept your

Exhibit X

1  statement and consider it, along with all the other evidence,

2  as well as the sentencing guidelines involved in a case such as

3  this; and you'll be notified of the exact date of sentencing.

4  I'm not going to set that date at this time.  But you'll be

5  notified.  It'll probably be within six weeks or a couple of

6  months, maybe six weeks, 6 to 8 weeks.

7       And Counsel, of course, will be notified.  And you can

8  keep that road hot between here and Kansas City as you have

9  been doing for the last several weeks.  All right, Mr. Graves,

10 put him in touch with the probation office; and with that

11 understanding, then, you may be excused until you're ordered to

12 be back.

13            **THE DEFENDANT:**  Thank you.

14            **MR. GRAVES:**  Thank you, Your Honor.

15            **THE COURT:**  All right.  If there's nothing further,

16 we'll be in recess.

17            (THE SENTENCING ENDED AT 10:32 a.m.)

18

19

20

21

22

23

24

25

Exhibit X

DAILY COPY

18

```
 1                    C E R T I F I C A T E

 2

 3       I, Rita Davis Sisk, RPR, BCR, CSR #1626, Official Court

 4   Reporter for the United States District Court, Northern

 5   District of Mississippi, was present in court during the

 6   foregoing matter and reported said proceedings

 7   stenographically.

 8       I further certify that thereafter, I, Rita Davis Sisk,

 9   RPR, BCR, CSR #1626, have caused said stenographic notes to be

10   transcribed via computer, and that the foregoing pages are a

11   true and accurate transcription to the best of my ability.

12       Witness my hand, this 21st day of March, 2008.

13

14

15

16

17                              Rita Davis Sisk

18                         RITA DAVIS SISK, RPR, BCR, CSR #1626
                           Official Court Reporter
19

20

21

22

23

24

25
```

Exhibit X