UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

v.                                                      CRIMINAL CASE NO. 3:07CR192-b-a

DAVID ZACHARY SCRUGGS

**PETITIONER'S MEMORANDUM IN REPLY TO THE GOVERNMENT'S RESPONSE
TO MOTION OF DAVID ZACHARY SCRUGGS FOR DEPOSITIONS**

Petitioner herewith offers his memorandum in reply to the Government's response to the Petitioner's Motion for Depositions.  (Doc. 328).

**Introduction**

The Government's response proves Petitioner's point in two ways:  First, it asks the Court to deny depositions because it (the Government) already knows what it thinks the evidence is and is not willing to allow the Petitioner to show that what the Government thinks it knows is simply not accurate.  The Government may place whatever spin it wants to on the evidence before the Court.  It cannot substitute its spin for evidence developed under the crucible of cross-examination of witnesses under oath. Second, the Government simply whistles past the properly pleaded and jurisdictionally sufficient pleadings that the Government's misconduct prejudiced Petitioner in making his plea.

**I.**

The Government first asserts that this Court has already denied Petitioner's request for depositions.  The ellipsis in the Government's quote hides a critical word in the original motion. That Motion said that Petitioner "**reserves** the right also to ask for depositions of key persons." (Emphasis added). (Doc. 316, at 4).    Thus this Court has not yet considered the request now before it.

1

The purpose of discovery in civil litigation – which this case is – has been clearly announced by the Supreme Court.

> The new rules, however, restrict the pleadings to the task of general notice-giving and invest the deposition-discovery process with a vital role in the preparation for trial. The various instruments of discovery now serve (1) as a device, along with the pre-trial hearing under Rule 16, to narrow and clarify the basic issues between the parties, and (2) as a device for ascertaining the facts, or information as to the existence or whereabouts of facts, relative to those issues. Thus civil trials in the federal courts no longer need be carried on in the dark. The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial.

*Hickman v. Taylor*, 329 U.S. 495, 501 (1947). The Motions filed by Petitioner have been designed to achieve this purpose while recognizing the special requirements for discovery under a § 2555 proceeding.  Indeed, it had been Petitioner's belief that discovery, if permitted,  would allow the Court to decide many of the issues in this case pursuant to Rule 56.

The Government apparently prefers to carry on this hearing "in the dark," suggesting that live witnesses brought by subpoena[1] or writ of habeas corpus ad testificandum are preferable to the narrowing of the issues contemplated by the usual discovery. Worse, the Government wants the Court to consider affidavits addressing only the Bar Complaint against Mr. Farese as sufficient to decide (1) Petitioner's claim that he is actually innocent of any bribery of or conspiracy to bribe Judge Lackey and (2) Petitioner's claims of prosecutorial misconduct. The

---

[1]     The Government says that, "Rule 45 of the Federal Rules of Civil Procedure does impose a 100-mile radius for the issuance of civil subpoenas, but Rule 12 of the rules applicable to Section 2255 proceedings clearly vests the Court with the discretion to permit the issuance of writs and nationwide subpoenas when necessary and, in fact, that has always been the practice in this district."  Doc.  328 at 7, n3.  The Government cites not a single example of a Court exercising such a limitless subpoena power, and Rule 12 says absolutely nothing about the subpoena power.   Instead, it simply says that, "The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."  Rules Governing Section 2255 Proceedings, 12.

issues in this case are much broader than Mr. Farese's conduct.  These affidavits simply do not address the issues in this case, all of which the Court ordered for hearing.

The Government also appears to forget a critical element of this proceeding:  Petitioner bears the burden of showing his actual innocence.

> To establish actual innocence, petitioner must demonstrate that,   "'in light of all the evidence,'"  "it is more likely than not that no reasonable juror would have convicted him." *Schlup v. Delo,* 513 U.S. 298, 327-328, 115 S.Ct. 851, 867-868, 130 L.Ed.2d 808 (1995)."

*Bousley v. United States*, 523 U.S. 614, 623, 118 S. Ct. 1604, 1611, 140 L. Ed. 2d 828 (1998). This burden requires Petitioner to show the Court that a reasonable juror would likely not find the Petitioner guilty beyond a reasonable doubt. When a

> court is assessing … whether a petitioner has made the requisite showing of innocence under *Carrier,* the analysis must incorporate the understanding that proof beyond a reasonable doubt marks the legal boundary between guilt and innocence. … It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do.

*Schlup v. Delo*, 513 U.S. 298, 328, (1995).

Given Petitioner's burden, due process requires that Petitioner have the opportunity to prove his actual innocence by showing that all persons who could offer proof that Petitioner did not know of any payment to Judge Lackey be permitted to say so in the manner most efficient for the Court's purposes.  Thus the Government concedes that some people can testify, but not everyone who might have knowledge.  Judge Lackey's testimony is important to Petitioner's claim of actual innocence.  Well before Judge Lackey sought and Tim Balducci agreed to pay a bribe, Judge Lackey recused himself from considering *Jones v. Scruggs*. Only after a meeting with FBI Agent Delaney did Judge Lackey decide to do what is virtually unknown in judicial

practice – unrecuse himself.  Since it was Judge Lackey and the Government who conceived the bribe and asked Mr. Balducci to pay it,  Petitioner could not have planned the bribe or known of its planning.  Whether there was any evidence that Judge Lackey or Agent Delaney knew or believed that Petitioner was a target of the bribery scheme hatched by the Government is part of the proof required of Petitioner.  Further, if Mr. Balducci had said to Judge Lackey, "I talked to Zach and Zach explicitly said we'll pay you $40,000,"  that would be highly relevant.  If, on the other hand, Mr. Balducci never said anything at all about Petitioner to Judge Lackey or Agent Delaney, that would be highly relevant too.  The Government could remove this issue by stipulating that neither Judge Lackey nor Agent Delaney ever discusses Petitioner with anyone.  Instead, the Government was Petitioner to subpoena these witnesses for the hearing.   This response discounts the value of the Court's time in favor obstructionism.

Agent Delaney is important for another reason.  He handled Tim Balducci after Mr. Balducci was arrested and offered to help the Government "get" Dick Scruggs.  He sent Tim Balducci into the Scruggs Law Firm on November 19, 2007, to obtain additional evidence against some or all of the persons who were ultimately indicted.  The Government has provided no information about that meeting;  the best source for that information is Agent Delaney.  Though it is hard to believe that the FBI has no report on that issue, it is impossible to believe that Agent Delaney did not speak with Mr. Balducci after that event.  Petitioner believes that if he was truthful, Balducci's report to Delaney (oral or otherwise) was exculpatory.   Agent Delaney knows.  Petitioner is entitled to find out.  It is not enough for the Government to deny;  it is necessary for the Government to permit evidence on that issue.  Due process requires no less.

Now to Joseph Langston. This is where the Government's spin becomes dizzying.  Mr. Langston's testimony goes primarily to the Government misconduct averments.   The Government cites Petitioner's March 19, 2008, renewed motion in limine to exclude the 404(b) evidence.  (Doc. 328, fn. 3).  The March 19 motion must be read against the Government's now-revealed-as-false assertion to this Court that

> "The testimony at trial from Mr. Langston would be brief, about what you've heard from me this morning. That testimony would also implicate Zach Scruggs. Joey Langston is prepared to testify that Zach Scruggs was ***fully aware*** of what was going on in the *Wilson* case."

Government Statement (Robert Norman) Hearing Tr., 2/21/2008 at 21:15:20 (emphasis added). The March 19 brief thus builds on the Government's failure to disclose more details of Mr. Langston's testimony – that is, what does it mean to be "fully aware?"  To know that there was a case filed is to be aware of it.  Petitioner was "aware" that there was a case.  That's what the March 19 brief said.  But the Government's claim that Mr. Langston would testify that Petitioner was "fully aware" is much broader and fully implicative of Petitioner.  It sweeps within its breadth all aspects of the case, including those matters to which Mr. Langston pled guilty.  It cannot be brushed away with an affidavit that pretends there is no difference between being aware of a case and being "fully aware of what was going on."

Nor does Mr. Norman's affidavit account for the fact that his statement is completely at odds with Mr. Langston's affidavit.

> [M]y statements and testimony exonerated Zach Scruggs in Scruggs II. … **All** of my statements regarding Zach were **exculpatory**. I had no knowledge of his involvement in *Wilson v. Scruggs*. … [A]s far as I knew, Zach was unaware of any criminal activity in that case. … I pled and agreed to give truthful testimony, which, as to Zach Scruggs, was that as far as I knew he had no involvement in *Wilson v. Scruggs*.

Affidavit of Joseph Langston (Doc. 328-1)(emphasis added).  And the Government's statement is completely at odds with what other Government employees knew to be true. Most strikingly, former AUSA (now U.S. Magistrate) David Sanders' sworn affidavit directly controverts the Government's 2008 representation to the Court that Mr. Langston's "testimony would also implicate Zach Scruggs" in the Delaughter/*Wilson* matter.   Judge Sanders swears as follows:

> "Joey Langston provided us with a great deal of information, but he <u>always</u> maintained Zach Scruggs was uninvolved in the *Wilson* matter.  <u>At no time</u> did either Joey Langston or Tony Farese ever say <u>anything</u> to me that would have <u>implicated</u> Zach in the *Wilson* matter."

Sanders Affidavit (Doc. 328-5)(emphasis added).

It is also contrary to Mr. Farese's statements at Mr. Langston's sentencing hearing. On December 16, 2008, Mr. Farese asked the Court to give Mr. Langston a lighter sentence because Mr. Langston's efforts *"produced guilty* <u>pleas</u> *in the first Scruggs matter."*  The plural can only refer to the two defendants who were subject to the Court's 404(b) ruling based on Mr. Langston's reported testimony– Richard Scruggs and Petitioner.

At the same hearing Assistant United States Attorney Dawson stated that Mr. Langston's cooperation was important to the resolution of the earlier cases. "To say that this [Langston's cooperation] added evidentiary weight to the original case would be a tremendous understatement*"* and that "*we* believe that Mr. Langston's decision to plead and cooperate was a significant factor in the resolution of *Scruggs I*."  *Scruggs I* involved the indictments of Richard Scruggs, Sidney Backstrom, Petitioner and others.  But Langston's testimony could only have gone to the cases against Richard Scruggs and Petitioner, as they were the only subjects of the Government's 404(b) motion.

6

Despite these obvious inconsistencies in the Government's argument, the issue is not what the affiants knew. It is what Robert Norman knew when he spoke to the Court. The depositions will focus on what Mr. Norman was told, when and by whom. To be plain, Petitioner asserts that when Mr. Norman told the Court that Mr. Langston would implicate Petitioner, either he knowingly misrepresented what he knew or he recklessly relied on an inconsistent side comment by Mr. Langston that did not implicate Petitioner at all in a second bribery scheme. It is only by obtaining testimony of these witnesses – Judge Sanders, Mr. Langston, and Mr. Dawson – about their discussions with Mr. Norman prior to his misrepresenting this matter to the Court that the prosecutorial misconduct charge can be fully developed for the Court – as due process requires.

Given Petitioner's burden, it is not enough that Mr. Norman asserts that there was no harm because he did not repeat the misrepresentation a second time. The proper course of action, if the Government had wanted to clear up the misrepresentation, would have been to file a notice of non-opposition to Petitioner's renewed motion to exclude the 404(b) evidence after Richard Scruggs and Sidney Backstrom pled. That was the Government's last chance to remedy its misrepresentation to the Court. Instead, the Government stood silent. Moreover, the Court must have believed what the Government said. The Court relied on it in three orders and departed from the Government's sentencing recommendation.

As to Mr. Farese, the Government wants to emphasize an alleged verbal waiver (the existence of which is denied by Petitioner) – nearly one month before a written waiver was offered to Petitioner. Written waivers are required under ethical canons so that their scope and rationale are not subject to subsequent debate. Thus depositions of Mr. Farese and the Prosecutors are necessary precisely because the terms of this alleged waiver are not known, its

existence is denied by Petitioner, and the scope of the Government's knowledge about the waiver is also unknown. The Government cannot purport to rely upon a "verbal waiver" while refusing to allow sworn testimony about either the existence of or scope of such a verbal waiver.  Yet that is the position the Government takes now.

The claim that the Government does not want to engage in discovery because of time and expense must be fully discounted.   The Petitioner pleaded guilty to what is now determined to have never been a crime.  He went to prison.  That he now seeks to vindicate himself from the Government's claims is a burden that falls on both the Government and the Petitioner.  And the burden of due process is something the Government should fully embrace, not attempt to stifle.

Any assertion that there will be "protests and objections" in the depositions is a confession from the Government of what it plans to do, not what Petitioner intends.  Petitioner is fully prepared to submit to the oversight of a magistrate or special master if this Court deems it necessary to protect the integrity of the discovery process.

## II.

Finally, the Government's claim that there is "one issue before the Court that is justiciable and not time-barred: whether or not David Zachary Scruggs knew [or was a co-conspirator in a scheme] that money had actually been delivered to Circuit Judge Henry Lackey in connection with their scheme to corruptly influence him"  is patently wrong. (Doc. 328, at 2, 8)  It ignores the claims of prosecutorial misconduct.  Further, this Court has three different and independent bases for jurisdiction over this Petition.  First, "a defendant can challenge his conviction [with a] showing [of] both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *U.S. v. Shaid*, 937 F.2d 228, 232 (5th Cir., 1991)(en banc) (internal citations omitted).   Second, "when a constitutional violation has probably resulted in the

conviction of one who is actually innocent," this provides an alternative basis for jurisdiction over a Section 2255 Petition.  *Id*.  Third, there is also a category of cases where procedural default is not at all applicable, because the guilty plea is nullified by a lack of jurisdiction. "Jurisdictional defects are always subject to attack under section 2255, as that statute expressly states."  *Thor v. U. S.*, 554 F.2d 759, 762 (5th Cir.1977) (quoted in *U.S. v. Mungia*, 240 F.3d 1074 (Table) (5th Cir., 2000)).

As shown in the Bench Memorandum Regarding Procedural Default, filed contemporaneously with this Memorandum, each of these avenues is applicable to the present case, because the Petitioner presents three distinct bases for relief.

**Conclusion**

For the reasons stated here and in Petitioner's Motion to Allow Depositions, Petitioner respectfully asks that the depositions requested be granted.

Respectfully submitted,

/s/Edward D. Robertson, Jr.
Edward D. Robertson, Jr.   Pro hac vice
Michael C. Rader MS Bar # 100205
Bartimus, Frickleton, Robertson & Gorny, P.C.
 715 Swifts Highway
Jefferson City, Missouri 65109
573-659-4454
573-659-4460 (fax)
chiprob@earthlink.net
mrader@bflawfirm.com

Christopher T. Robertson
Attorney at Law
MS Bar # 102646
christophertrobertson@gmail.com
6342 N Via Lomas de Paloma
Tucson, AZ 85718

William N. Reed
MS Bar # 4689
Baker, Donelson, Bearman,
Caldwell & Berkowitz, PC
Meadowbrook Office Park
4268 I-55 North (Zip 39211)
P. O. Box 14167
Jackson, MS  39236
Direct:  601.351.2410
Fax:  601.592.2410
wreed@bakerdonelson.com

## CERTIFICATE OF SERVICE

I, Edward D. Robertson, Jr., hereby certify that on March 14, 2011, I served copies of this Motion the Office of the United States Attorney for the Northern District of Mississippi by way of the Electronic Court Filing (ECF) system.

/s/ Edward D. Robertson, Jr.