IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

V.                                                                    CRIMINAL CASE NO. 3:07CR192-B-A

DAVID ZACHARY SCRUGGS

### ORDER

Presently before the court is Petitioner's Motion to Disqualify Assistant United States Attorney Robert Norman from participating in the Government's defense of the Section 2255 motion by Zach Scruggs presently before the court for decision. Upon due consideration and having heard the parties' respective arguments and witness testimony on May 9, 2011, the court is ready to rule.

Petitioner asserts that AUSA Norman must be disqualified from further representing the Government in this case because, inter alia, he has violated various rules of professional conduct during the underlying prosecution, including making a misrepresentation to this court and to Petitioner on what evidence he intended to introduce in a 404(b) proceeding against Petitioner herein and failing to take remedial measures in regard thereto. The court is persuaded by only one of the various claims, specifically that Mr. Norman made a material misrepresentation to this court and to Petitioner and failed to take remedial measures to correct his misstatement in a timely manner and allowed a document containing language consistent with that misstatement to be filed after the Government was advised of the error, in violation of Mississippi Rule of Professional Conduct 3.3(a). Finding that the motion to disqualify should be granted on this ground, the court finds Petitioner's remaining claims moot and will not address them.

"[D]isqualification cases are governed by state and national ethical standards adopted by the court." *In re American Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992). "The Rules of the

Northern District of Mississippi specifically adopt the Mississippi Rules of Professional Conduct." *U.S. v. Starnes*, 157 Fed. Appx. 687, 693 (5th Cir. 2005).

The court finds that the Government's representation to the court originally as to the 404(b) evidence against Richard Scruggs was accurate; but after Richard Scruggs pleaded guilty, the 404(b) evidence was lessened as to Petitioner, Zach Scruggs. Mr. Norman represented to the court that his 404(b) evidence as to Zach Scruggs was that Zach Scruggs was "fully aware" of what was going on in the *Wilson v. Scruggs* case, implying that Zach Scruggs was aware that a million dollars had been paid by Richard Scruggs to Ed Peters to corrupt Hinds County Circuit Judge Bobby DeLaughter. In fact, the evidence available to the prosecution criminally inculpated Richard Scruggs but did not support the position that Zach Scruggs was actively involved in the *Wilson*/DeLaughter matter.

Mr. Norman was advised by attorney Anthony Farese immediately after the February 21, 2008 motions hearing that Mr. Norman's representation to the court was incorrect. Mr. Norman admits that he initially "blew off" Mr. Farese's attempt to advise him of his misstatement to the court. The following colloquy between Mr. Norman and Mr. Farese took place at the May 9, 2011 hearing on the present motion:

> Norman: Sir, the motion day hearings conducted in this courtroom February 20th and 21st of 2008, you were present for those; were you not?
>
> Farese: Yes, sir.
>
> Norman: Present in the courtroom when I told the court that Joey Langston was fully – Joey Langston would testify that Zach Scruggs was fully aware of *Wilson v. Scruggs*?

Farese: Yes, sir.

Norman: And in fairness, you came up to me after that hearing to tell me that I had misconstrued what Mr. Langston had said; did you not?

Farese: I approached you and told you I thought that that was incorrect, what had been stated to the court, yes, sir, based on my understanding.

Norman: In all candor, I believe I basically blew you off that afternoon and said, "I'm tired. I'm going home. We'll talk about it later." Is that right?

Farese: Yes, sir.

Mr. Norman then questioned Mr. Farese as to whether the two of them resolved this matter a few days later. Mr. Farese agreed that they did at a Rule 11 meeting attended by Mr. Norman, Mr. Farese, and Joey Langston. Unfortunately, although the matter may have been resolved among Mr. Norman, Mr. Farese, and Mr. Langston, the matter remained unresolved with the court and Petitioner. In fact, a month after the motions hearing referenced above, the Government filed its "Response and Memorandum Brief in Opposition to Defendant's Motion in Limine" in which it stated, "There have been no substantial changes in the instant case that would require a reevaluation of the court's previous ruling that the proffered 404(b) evidence is admissible against Zachary Scruggs." This document was signed by now retired Assistant U.S. Attorney Thomas Dawson, then Assistant U.S. Attorney, now Magistrate Judge David Sanders, and Mr. Norman. The document is puzzling, to say the least. It appears to be inconsistent with the Government's position at that point in time and inconsistent with information which had been provided to Petitioner. There had been a significant change from the 404(b) evidence available against Richard Scruggs to the 404(b) evidence available against Zach Scruggs.

For instance, Mr. Farese testified that Mike Moore, counsel for Petitioner, telephoned him on two separate occasions prior to Petitioner's plea asking him about the Government's representations to Mr. Farese regarding the 404(b) evidence. Mr. Farese stated, "He specifically referenced a January 9th, 2008 letter of mine to Mr. Zach Scruggs and asked me if I stuck with what was written in that letter regarding what the Government had represented to me on January 7th with regard to Zach Scruggs not being involved in *Wilson*, not being a target nor a suspect. And I maintained that, yes, sir, that was my understanding." Mr. Farese advised Mr. Moore that Joey Langston could and would testify only to Zach Scruggs' knowledge that Ed Peters had been hired by Richard Scruggs to influence then Judge Bobby DeLaughter and that Langston would testify he had no knowledge of criminality on the part of Zach Scruggs in the *Wilson v. Scruggs* case. It would thus appear that Petitioner, through his counsel, was fully advised of the Government's stance on the 404(b) matter after these telephone calls between Mr. Moore and Mr. Farese. Further, the record reflects that at some point prior to March 19, 2008, Petitioner was made aware of the full extent of the Government's 404(b) evidence against him (presumably through Mr. Farese's communication with Mr. Moore) as evidenced by Petitioner's filing of his renewed motion in limine to exclude the evidence. The motion states, "[T]he government, to date, has only indicated that Zach Scruggs was aware that Ed Peters was hired in the case because of his long-standing relationship with Judge DeLaughter. Additionally, the government provided counsel with a copy of an email involving Zach Scruggs and Johnny Jones [Richard Scruggs' attorney in the *Wilson v. Scruggs* case] wherein they discuss the *Wilson* case," and in which email Zach Scruggs states, "I can tell you that you could file briefs on a napkin right now

4

and get it granted given [Judge DeLaughter's] view of the case. . . ." The Government's response to the motion, however, continues to confound.

Petitioner chose not to pursue the motion to prohibit the 404(b) evidence against him set for a hearing on March 19, 2008, but instead entered into a plea agreement with the Government and pleaded guilty to a reduced charge on March 21, 2008. Whether the court would have allowed the testimony of Joey Langston as to his statement about what Zach Scruggs knew about *Wilson* is problematic. A showing of prejudice is not required in an attorney disqualification case as it is in a prosecutorial misconduct case where the more serious consequences of a defendant's conviction or sentence being overturned or indictment being dismissed are possible. *See, e.g., U.S. v. Davis*, 609 F.3d 663, 677. The court makes no finding at this time as to prejudice.

The standard for disqualification of an attorney is very low. "An attorney may be disqualified only when there is 'a reasonable *possibility* that some specifically identifiable impropriety' actually occurred and, in light of the interests underlying the standards of ethics, the social need for ethical practice outweighs the party's right to counsel of his choice." *U.S. v. Kitchin*, 592 F.2d 900, 903 (5th Cir. 1979) (quoting *Woods v. Covington County Bank*, 537 F.2d 804, 810-813 (5th Cir. 1976) (emphasis added)). As Petitioner accurately notes, "[t]he 'reasonable possibility' evidentiary threshold is one of the very lowest standards in the law." *See Mwembie v. Gonzales*, 443 F.3d 405, 415 (5th Cir. 2006) ("A 'reasonable possibility' standard is less than a 'more likely than not' standard."). Because of the unusually low burden of proof in attorney disqualification cases and because no explanation was offered the court for

the failure adequately to correct the record, the court is compelled to find that the neglect reaches the level of "impropriety," within the meaning of that term as contemplated by the Fifth Circuit.

Petitioner has proven a misrepresentation to the court and to Petitioner by the Government attorneys, and that misrepresentation was not remedied in a timely manner. While it appears that Petitioner was fully advised on the 404(b) matter well before he entered his plea to misprision of a felony, there is no evidence that Petitioner was advised by the U.S. Attorney's Office or that the court was at all. Petitioner should not have had to rely on another attorney who is not a Government agent to advise him of matters about which the Government should have advised him. The chain of communication from Mr. Norman to Mr. Farese to Mr. Moore was wholly insufficient. Mr. Norman or another agent of the Government should have advised Petitioner or his counsel, as well as the court, directly as to the limits of the Government's 404(b) evidence against Petitioner. The failure to do so cannot go without some consequence.

It may well be that the misrepresentation was an unintentional mistake based on a miscommunication between Joey Langston and Mr. Norman. In fact, Joey Langston testified before this court that his communication with AUSA Norman resulted in a misunderstanding. The court is nonetheless nonplused by the Government's failure to correct this mistake when it was made aware of it and on the record before the court in a timely manner. The court is further baffled by the Government's inconsistent statement in its response to Petitioner's renewed motion to exclude the 404(b) evidence. Even though the Government may have planned on seeking the 404(b) evidence available against Zach Scruggs in an upcoming trial, the 404(b) evidence available against Zach Scruggs had decreased substantially from that available against his father, and it was a misrepresentation to state in the Government's filing, signed by each of

6

the three prosecutors, that "[t]here have been no substantial changes in the instant case that would require a reevaluation of the court's previous ruling. . . ."

The court is not finding that Mr. Norman had any malicious motive or intent behind his omission to correct the previous misstatement of what evidence was available as to Zach Scruggs. The court has always known Mr. Norman to be a conscientious and capable attorney of high integrity, and there has been nothing presented in this record to show otherwise.

The U.S. Attorney's Office's failure to correct the misrepresentation was probably a matter of neglect rather than an intentional wrongdoing; but, as set forth above, that neglect is inexcusable under the law and the facts of this case. In accordance with *U.S. v. Kitchin*, the court finds a "reasonable possibility that a specifically identifiable impropriety" – that is, a failure to correct a misstatement to the court – occurred. While the evidence presented does not substantiate that Mr. Norman "knowingly [made] a false statement of material fact or law to" the court, he came to know that his statement was false, and he failed to correct it – which is, in essence, a violation of Mississippi Rule of Professional Conduct 3.3(a)(1).[1]

For the foregoing reasons, the court finds that Petitioner's Motion to Disqualify Robert Norman is well taken, should be, and the same is, hereby, **GRANTED**, and he is hereby disqualified from further representing the Government in the prosecution of this Section 2255 motion.[2]

---

[1] *See also* Rule 3.3(a)(4), which states, in part, "If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures."

[2] By the ruling herein, Mr. Norman will now be unfettered to offer his testimony at the Section 2255 motion hearing on May 23, 2011, if he and the Government or Petitioner so choose.

**SO ORDERED AND ADJUDGED** this, the 11th day of May, 2011.

               */s/ Neal Biggers*
               **NEAL B. BIGGERS, JR.**
               **UNITED STATES DISTRICT JUDGE**