IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

V.                                                     CRIMINAL CASE NO. 3:07CR192-B-A

DAVID ZACHARY SCRUGGS

## **MEMORANDUM OPINION**

Presently before the court is Petitioner's Motion for Summary Judgment as to his Motion to Vacate pursuant to Title 28 U.S.C. § 2255. Upon due consideration of the motion, response, exhibits, and supporting and opposing authority, the court is ready to rule.

### Factual and Procedural Background

The Petitioner, David Zachary Scruggs, was indicted on November 28, 2007, along with his father, Richard F. Scruggs, Sidney A. Backstrom, Timothy R. Balducci, and Steven A. Patterson on a six-count indictment arising from an attempt to bribe the Honorable Henry L. Lackey, a Mississippi circuit court judge, for a favorable ruling in a civil lawsuit styled *Jones, et al. v. Scruggs, et al.* in the Circuit Court of Lafayette County, Mississippi. The defendants desired that Judge Lackey enter an order directing the *Jones* case to arbitration. Count One of the indictment against Petitioner charged conspiracy in violation of 18 U.S.C. § 371 to commit bribery under 18 U.S.C. § 666 and honest services fraud under 18 U.S.C. §§ 1343 and 1346. Counts Two, Three, and Four charged federal program bribery under 18 U.S.C. § 666. The Government based these three counts on its assertion that Judge Lackey was "an agent of a subdivision of the judicial branch of the state government of Mississippi, which received benefits in excess of $10,000 in any one-year period for each of the years 2006 and 2007, from federal programs." Counts Five and Six charged honest services fraud in violation of 18 U.S.C. §§ 1343 and 1346.

Petitioner retained counsel and pleaded "not guilty" to all charges on November 28, 2007. After his co-defendants pleaded guilty to conspiracy to bribe Judge Lackey, Petitioner waived indictment and pleaded "guilty" to an information charging misprision of a felony on March 31, 2008, in accordance with a plea agreement accepted by the court on that date. By pleading guilty to misprision of a felony, which carries a maximum sentence of three years imprisonment, Petitioner received the significant bargain of having all charges in the original indictment dismissed by the Government. Those dismissed charges carried a total maximum sentence of seventy-five years imprisonment. On July 2, 2008, Petitioner was sentenced to imprisonment for a period of fourteen months followed by a period of supervised release for one year. He was fined $250,000 and a special assessment of $100. Petitioner successfully served his sentence. His period of supervised release ended on August 18, 2010.

On August 18, 2010, Petitioner filed a motion to vacate his conviction pursuant to 28 U.S.C. § 2255.[1] Petitioner asserts that the United States Supreme Court's decision in *Skilling v. United States*, 130 S. Ct. 2896 (2010), decriminalized the underlying felony upon which his conviction for misprision of a felony was based. He claims actual innocence of any crime involving bribery or kickback schemes. He further claims that the Government falsely

---

[1]Petitioner moves alternatively for issuance of a writ of error *coram nobis*, "[i]f for any reason § 2255 is inadequate." The most notable distinction between the two lies in the question of whether a petitioner is "in custody." *See, e.g., United States v. Esogbue*, 357 F.3d 532, 534 (5th Cir. 2004) ("A writ of error *coram nobis* is a remedy available to vacate a conviction when the petitioner has served his sentence and is no longer in custody, as is required for post-conviction relief under 28 U.S.C. § 2255."). Petitioner herein filed his Section 2255 motion on August 18, 2010, the same date he was released from custody, so there is some ambiguity on this matter, but it is of no consequence. First, the government did not contest this issue, and second, the Fifth Circuit has stated that "the *coram nobis* motion is a civil proceeding 'of the same general character as one under 28 U.S.C. § 2255,'" and this court shall proceed with that understanding and will refer to the motion as a Section 2255. *United States v. Cooper*, 876 F.2d 1192, 1194 (5th Cir. 1989) *abrogated on other grounds by Smith v. Barry*, 502 U.S. 244 (1992).

represented to him and to the court that Joey Langston was prepared to offer 404(b) evidence[2] against him and testify that Petitioner had full knowledge of and participated in an additional judicial bribery scheme involving a case before Hinds County Circuit Judge Bobby DeLaughter styled *Wilson v. Scruggs*.[3] Petitioner asserts that by the statement to the court concerning the 404(b) evidence to be given in the DeLaughter/*Wilson* bribery scheme, he was thus coerced to enter his plea for misprision of a felony, that the plea was given involuntarily, and that the conviction based upon the plea should be vacated. As an alternative basis for relief, Petitioner asserts a claim for ineffective assistance of counsel, alleging that his initial representation in this case was constitutionally defective due to a conflict of interest on the part of his attorney. He contends that his original attorney, Anthony Farese, while retained by Petitioner, secretly negotiated with the Government to procure a plea for Joey Langston in the DeLaughter/*Wilson* case which included cooperation adverse to Petitioner in the Lackey/*Jones* case. It was this cooperation, according to Petitioner, that led to the Government's misrepresentation regarding the Rule 404(b) evidence mentioned above.

Petitioner's Section 2255 motion to vacate remains pending before the court, to be heard on May 23, 2011. Petitioner has now filed a motion for summary judgment on his motion to

---

[2]Federal Rule of Evidence 404(b) addresses the admissibility of evidence of "other crimes, wrongs, or acts."

[3]Richard Scruggs later pleaded guilty to the bribery of Judge DeLaughter, and Judge DeLaughter pleaded guilty to attempting to obstruct, influence, and impede an official proceeding in violation of 18 U.S.C. § 1512(c)(2). Both have been sentenced on these convictions.

vacate.[4]  Alternatively, he asks for partial summary judgment as to any of the claims raised in the motion.  The court has duly considered the motion for summary judgment, and is ready to rule.

Standard of Review

"Federal Rule of Civil Procedure 56 'applies to habeas proceedings.'"  *Brandt v. Gooding*, No. 09-7907, 2011 WL 567469, at *6 (4th Cir. 2011); *see also United States v. Olis*, No. H-07-3295, 2008 WL 5046342, at *3 (S.D. Tex. Nov. 21, 2008) (citing Rules 8(a) and 12 following Section 2255) ("Federal Rules of Civil Procedure, including Rule 56, are applicable to § 2255 motions.").

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986).  If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex Corp.*, 477 U.S. at 324, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274 (quoting Fed. R. Civ. P. 56(c), 56(e)).  Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could

---

[4]Petitioner's summary judgment motion makes no mention of his claim regarding his initial counsel's alleged conflict of interest.

find for the non-movant.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986).

<u>*Skilling*</u>

In *Skilling v. United States,* 130 S.Ct. 2896, 2931-32 (2010), the U.S. Supreme Court narrowed the application of the honest services fraud statute, 18 U.S.C.A. § 1346, to bribery and kickback schemes and ruled that the statute does not criminalize undisclosed conflicts of interest or undisclosed self-dealing.  Following this decision, Petitioner filed a 28 U.S.C.A. § 2255 motion, arguing that he committed no federal crime in light of the *Skilling* decision.

The Anti-terrorism and Effective Death Penalty act establishes a one-year statute of limitations for Section 2255 motions, which runs from the latest of:

1.      the date on which the judgment of conviction becomes final;

2.      the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

3.      the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

4.      the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C.A. § 2255(f)(1-4).  The *Skilling* decision should be applied retroactively to cases on collateral review since it is substantive and narrows the scope of the criminal statute by interpreting its terms.  *Schriro v. Summerlin*, 542 U.S. 348 (2004) ("New *substantive* rules generally apply retroactively. This includes decisions that narrow the scope of a criminal statute by interpreting its terms"); *Bousley v. United States*, 523 U.S. 614, 620-21(1998).  Petitioner's

*Skilling* claim is therefore timely under Section 2255(f)(3) because *Skilling* was decided on June 24, 2010, and Petitioner filed his Section 2255 motion on August 18, 2010.

There are nonetheless significant hurdles to considering Petitioner's claim on the merits. *Bousley,* 523 U.S. at 621. "Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." *Id.* "Indeed, the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." *Id.* Petitioner filed no direct appeal from his guilty plea challenging his conviction or sentence and has procedurally defaulted on the claims he now raises.[5]

"Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice' or that he is 'actually innocent.'" *Id.* at 622. Petitioner has offered no explanation for his default on his *Skilling* claim in an attempt to demonstrate cause, nor is cause demonstrated by the fact that Petitioner's conviction occurred before the Supreme Court decided *Skilling*, since the legal issues concerning the honest services statute were well-known at the time of Petitioner's conviction. *Id.* If a petitioner fails to demonstrate cause, the court need not consider whether there is actual prejudice. *Rodriguez v. Johnson,* 104 F.3d 694,

_____

[5]Petitioner's ineffective assistance of counsel claim, which is not raised in his summary judgment motion, is excepted from the procedural default rule. *Massaro v. United States*, 538 U.S. 500, 504 (2003). "[A]n ineffective assistance of counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Id.* The U.S. Supreme Court has held that district courts are the "the forum best suited to developing the facts necessary to determining the adequacy of representation." *Id.* at 505. Generally, the Fifth Circuit declines to review claims of ineffective assistance of counsel on direct appeal. *United States v. Gordon*, 346 F.3d 135, 136 (5th Cir. 2003).

697 (5th Cir. 1997). Thus Petitioner must establish his "actual innocence" in order to prevail on his *Skilling* claim.

"'Actual innocence' means factual innocence, not mere legal insufficiency." *Bousley,* 523 U.S. at 623-24. In other words, the Government is not limited to the existing record to rebut any showing Petitioner might make. *Id.* at 624. Rather, the Government is permitted to present any admissible evidence of Petitioner's guilt even if that evidence was not presented during Petitioner's plea colloquy. *Id.* In cases such as this one where the Government has forgone more serious charges in the course of plea bargaining, Petitioner's showing of actual innocence must also extend to those charges. *Id.* "A district court, in making its assessment of a petitioner's showing, is not bound by the rules of evidence that govern a trial: The habeas court must make its determination concerning the petitioner's innocence in light of all the evidence, including that alleged to have been illegally admitted and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." *Bosley*, 409 F.3d at 662. The Fifth Circuit has stated that "legal innocence" arises whenever a constitutional violation by itself requires reversal, whereas "actual innocence" means that the person did not commit the crime. *Rodriquez*, 104 F.3d at 697.

Petitioner argues that the Government must be held to proving its case beyond a reasonable doubt, but proof beyond a reasonable doubt is not the standard of proof in this collateral proceeding nor does the Government carry the burden of proof. *Bosley v. Cain*, 409 F.3d 657, 664 (5th Cir. 2005) (proceeding under 28 U.S.C.A. § 2254) "First, [petitioner] bears the burden of establishing that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence. Second, there is no presumption of innocence at a

habeas proceeding-[petitioner] comes before the habeas court with a strong-and in the vast majority of the cases conclusive-presumption of guilt." *Id.* "To establish actual innocence, petitioner must demonstrate that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623.[6] This "standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do." *Bosley*, 409 F.3d at 662. The standard "does not merely require a showing that a reasonable doubt exists in light of the new evidence, but rather that no reasonable juror would have found the defendant guilty." *Id.* at 664. For example, in *Bosley v. Cain*, 409 F.3d 657, 665 (5th Cir. 2005), the Fifth Circuit found that the petitioner's evidence showed that a reasonable doubt could have been found to exist but affirmed the petitioner's conviction, holding that the evidence did not show that no reasonable juror would have found petitioner guilty.

In his motion for summary judgment, Petitioner argues that even if he had known of a monetary payment to Judge Lackey, he would have assumed it was intended as a gratuity, not as a bribe. He asserts that this is so because arbitration was legally required in the *Jones* matter and Judge Lackey had no discretion to deny the motion. *See Barrett v. Jones, Funderburg, Sessums, Peterson & Lee, LLC*, 27 So. 3d 363, 377 (Miss. 2009) (reversing sanctions against Richard Scruggs' former co-venturers/appellants and remanding for entry of an order compelling arbitration in the underlying fee dispute).

---

[6]"The word 'reasonable'. . . is not without meaning. It must be presumed that a reasonable juror would consider fairly all of the evidence presented. It must also be presumed that such a juror would conscientiously obey the instructions of the trial court in requiring proof beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

Petitioner cites *United States v. Campbell*, 684 F.2d 141 (D.C. Cir. 1982), non-binding authority from the District of Columbia Circuit, to show the distinction between gratuities and bribes. The court stated, "Payments to a public official for acts that would have been performed in any event . . . are probably illegal gratuities rather than bribes." *Id.* at 148. The court notes, however, that "[t]he word 'probably' reflects the controlling nature of the defendant's intent, and the fact that the donor's intent may differ from the donee's." *Id.*, n.11. The court further states that "the donor may be convicted of giving a bribe despite the fact that the recipient had no intention of altering his official activities, or even lacked the power to do so." *Id.* (quoting *United States v. Anderson*, 509 F.2d 312, 332 (D.C. Cir. 1974), *cert. denied*, 420 U.S. 991 (1975)). Petitioner also cites *United States v. Brumley*, 116 F.3d 728 (5th Cir. 1997), in which the Fifth Circuit stated that "the official must act or fail to act contrary to the requirements of his job under state law," and "that if the official does all that is required under state law, alleging that the services were not otherwise done 'honestly' does not charge a violation of the mail fraud statute....Thus, the mere violation of a gratuity statute...will not suffice." *Id.* at 734. Two years after *Brumley*, the Supreme Court distinguished bribery and gratuity in *United States v. Sun-Diamond Growers of California*, 526 U.S. 398 (1999), noting, as the *Campbell* court did, that "[t]he distinguishing feature of each crime is its intent element." *Id.* at 404. The Court further stated:

> Bribery requires intent "to influence" an official act or "to be influenced" in an official act, while illegal gratuity requires only that the gratuity be given or accepted "for or because of" an official act. In other words, for bribery there must be a *quid pro quo* - a specific intent to give or receive something of value *in exchange* for an official act. An illegal gratuity, on the other hand, may constitute merely a reward for some future act that the public official will take (and may already have determined to take), or for a past act that he has already taken.

*Id.* at 404-05.

The court is unpersuaded by Petitioner's position that there is no genuine issue of fact as to whether the payment to Judge Lackey was a "gratuity" as opposed to a bribe – i.e., that it was, without question, a gratuity. Whether Judge Lackey had discretion to deny arbitration or was required by law to compel arbitration, petitioner's co-defendants clearly sought some sort of benefit in making the payment to him even if that benefit were merely to speed up the process or, as the Government suggests, "to ensure a favorable outcome" because they "could not countenance the idea of not being in control." Either of these would appear to be the *quid pro quo* required for bribery as defined by *Sun-Diamond Growers*. Since, according to the Supreme Court as well as the court in *Campbell*, the "donor's intent" is a relevant inquiry in determining whether a payment is a gratuity or a bribe, at the very least a question of fact exists as to Petitioner's argument. The court, as fact-finder, after examining the evidence presented at the upcoming hearing on the Section 2255 motion, must determine whether Petitioner intended "to influence," that is, to bribe, or whether the payment to Judge Lackey was given "for or because of an official act," that is, a gratuity.

Because there are unresolved questions of fact on the issues presented by *Skilling*, including but not limited to those addressed above, Petitioner's motion for summary judgment is denied as to honest services fraud and the related conspiracy claim.

### Involuntary Plea due to Government Misrepresentation

Petitioner contends that the Government coerced his guilty plea through material misrepresentations to him and to the court that Joey Langston would offer 404(b) evidence against Petitioner and testify that Petitioner had been involved in a scheme to bribe Judge

DeLaughter in the DeLaughter/*Wilson* case. Petitioner argues that his misrepresentation claim is not barred by the one-year statute of limitations for Section 2255 claims since the limitations may run from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. §2255(f)(4). Petitioner further argues that he can overcome procedural default for not raising his misrepresentation claim by showing cause and prejudice.

On February 21, 2008, the court conducted a hearing on defendants' motion in limine to exclude 404(b) evidence against Richard and Zach Scruggs and Sid Backstrom. The Government represented to the court on that date that "[t]he testimony at trial from Mr. Langston . . . would also implicate Zach Scruggs. Joey Langston is prepared to testify that Zach Scruggs was fully aware of what was going on in the *Wilson* case." The court denied the defendants' motion in limine. Petitioner renewed his motion in limine after Richard Scruggs and Sid Backstrom pleaded guilty. The court scheduled a hearing for March 19, 2008, to resolve the issue of whether Langston's testimony would also apply to Petitioner after Richard Scruggs was out of the case. The Government's response to Petitioner's renewed motion in limine to exclude the 404(b) evidence against Zach Scruggs stated, "There have been no substantial changes in the instant case that would require a reevaluation of the court's previous ruling that the proffered 404(b) evidence is admissible against Zachary Scruggs." Petitioner forewent the opportunity to further contest the 404(b) evidence and chose instead to plead guilty to misprision of a felony on March 21, 2008.

Petitioner argues that he had "no choice but to take the Government at its word" that Joey Langston would testify that Petitioner was "fully aware of what was going on in the *Wilson*

case."  Petitioner contends that new evidence in the form of a book published in December 2009 by Thomas Dawson, a former prosecutor in this case, and affidavits published in April 2010 by prosecutors in this case, Mr. Dawson, Robert Norman, and David Sanders, as well as an affidavit by Mr. Langston, establish that the Government's representation to the court that Petitioner was "fully aware" of the *Wilson* matter is false.[7]  The prosecutors' affidavits stated, "Zach Scruggs was not considered as a potential defendant in *Scruggs II*[8] (the DeLaughter/*Wilson* matter); "Zach Scruggs was not a target in *Wilson v. Scruggs*"[9]; "Joey Langston provided us with a great deal of information, but he always maintained Zach Scruggs was uninvolved in the *Wilson* matter.  At no time did either Joey Langston or Tony Farese ever say anything to me that would have implicated Zach in the *Wilson* matter."[10]  The prosecutors' statements in their affidavits, as noted, are contrary to the Government's representations to the court "that Zach Scruggs was fully aware of what was going on in the *Wilson* case."

Petitioner contends he could not have known of the government's alleged concealment until it was publically aired in the book and affidavits.  Petitioner argues that he has established "good cause" for his procedural default by "showing that some objective factor external to the defense prevented him from raising on direct appeal the claim he now advances."  *United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996).  Petitioner argues that the Government has conceded

---

[7]These affidavits were filed with the Mississippi Bar in support of Mr. Farese after Petitioner filed a bar complaint against him regarding his representation of Petitioner in this action.

[8]Affidavit of Thomas Dawson, April 22, 2010.

[9]Affidavit of Robert Norman, April 26, 2010.

[10]Affidavit of David Sanders, April 26, 2010.

that the purported 404(b) evidence against petitioner was a "turning point in the case" and an "overwhelming force" that effectively "compelled" petitioner to plead guilty.

Summary judgment is inappropriate on this issue in two respects. First, a threshold question must be answered: whether Petitioner, through the exercise of due diligence, could have discovered his alleged bases for this claim at a time that would place the claim outside the statute of limitations. The Government contends that it made no intentional misrepresentations to the court and that a miscommunication between government counsel and Joey Langston led to the Government's statement to the court that "Joey Langston is prepared to testify that Zach Scruggs was fully aware of what was going on in the *Wilson* case." The Government now concedes that Joey Langston had limited knowledge about Petitioner as related to the DeLaughter/*Wilson* case.[11] The Government argues that despite its statement to the court that Langston would testify that petitioner was "fully aware of what was going on in the *Wilson* case," Petitioner, in fact, knew that Joey Langston would not implicate him criminally in the *Wilson* case before he filed his motion for rehearing on March 19, 2008, and before he pleaded guilty. The Government has offered evidence that Langston's attorney, Anthony Farese, wrote a letter to Petitioner before Petitioner's renewed motion in limine assuring him that Langston would not testify that Petitioner was criminally involved in the *Wilson* case, and that Petitioner's

---

[11]In his testimony before the court on May 9, 2011, Mr. Langston stated that when he talked to the FBI and to the prosecutors about Zach Scruggs' knowledge of the *Wilson* case, he tried to exculpate Zach; however, Mr. Langston's testimony before the Grand Jury on October 23, 2008, is more incriminating than exculpatory. Answering the prosecutor's question regarding the extent of Zach Scruggs' knowledge in the *Wilson* case, Mr. Langston stated, "I don't recall what Zach Scruggs was – I don't recall a meeting that he was in. He could have been, but I don't recall one. But I can tell you this: Just based on my discussions with Zach Scruggs or my discussions with other people when Zach Scruggs was present, he knew that we hired Ed Peters, and he knew that Ed Peters had a relationship with Bobby DeLaughter. And he knew that Ed Peters had not made an entry of appearance."

counsel, Mike Moore, followed up on this letter by calling Anthony Farese twice for assurance that he stood by the letter.   Since Petitioner contends the opposite – that the alleged misrepresentation did not come to light until the book was published in December 2009 and the affidavits were published in April 2010[12] – there are genuine issues of material fact on this contested issue.  The court finds that summary judgment is inappropriate because it cannot be determined at this time whether Petitioner's claim is barred by the one-year statute of limitations.

If Petitioner's claim survives the statute of limitations, then the court will proceed to the substantive merits of the claim.  According to Petitioner, the Government has conceded that he had no involvement in the DeLaughter/*Wilson* matter, but the Government has clarified its position that Zach Scruggs' apparent knowledge of the corrupt influence being exerted in *Wilson v. Scruggs*, even without any active involvement, was enough to make evidence of that corruption admissible against him, to show knowledge, intent, and state of mind.  Because this matter remains disputed, the court finds that summary judgment is inappropriate, and Petitioner's misrepresentation claim shall proceed to the upcoming evidentiary hearing.

## The "Act of Concealment" Element of Misprision of a Felony

At his guilty plea hearing Petitioner was represented by a former United States Attorney, a former Assistant United States Attorney, and a former Attorney General of Mississippi, and no objections were made to the information or factual basis supporting the plea.  Petitioner filed no direct appeal and now claims for the first time that with this array of lawyers standing with him he pleaded guilty to a non-crime over which the court had no jurisdiction.  He now claims

---

[12]Petitioner's Section 2255 motion was filed on August 18, 2010, and is therefore well within the statute of limitations if the limitations period began running in December 2009 or May 2010.

jurisdiction was lacking "because the information and factual basis did not allege an essential element of that crime – 'an affirmative step to conceal the felony.'"  Petitioner raises these allegations in a footnote in his November 9, 2010, Section 2255 reply memorandum and a second time in a bench memorandum filed March 14, 2011.  Petitioner raises the factual basis issue again in his summary judgment motion arguing that the court should conclude that Petitioner "never took an affirmative step to conceal any federal crime."  The information and factual basis claims were not stated as grounds for Petitioner's 28 U.S.C. § 2255 motion, and Petitioner did not request the court's permission to amend his petition to include these claims.  A Section 2255 motion may not be amended by adding new claims in a brief, *see* Fed. R. Civ. P. 15(a)(2), but Petitioner attempts to overcome any procedural missteps in raising these new claims by arguing that issues concerning the sufficiency of an information and factual basis are "jurisdictional" and "avoid[] the problem of procedural default altogether, since self-evident problems that the court lacked jurisdiction are never waived."  The court will address the merits of Petitioner's claim and its procedural defects.

Petitioner is correct that misprision of a felony includes as an element "an affirmative act to conceal the felony." "The elements of misprision of a felony are: (1) knowledge that a felony was committed; (2) failure to notify the authorities of the felony; and (3) an affirmative step to conceal the felony."  *United States v. Walkes* 2011 WL 396485, 2 (5th Cir. 2011) (citing *United States v. Adams,* 961 F.2d 505, 508 (5th Cir.1992).  The mere failure to report a felony is not sufficient to constitute a violation of the misprision statute.  *United States v. Davila*, 698 F.2d 715, 717 (5th Cir. 1983).

Petitioner is incorrect, however, that the information failed to state all of the essential elements. The one-count information supporting Petitioner's plea states: "defendant, having knowledge of the actual commission of a felony cognizable by a court of the United States, **concealed** and did not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, in violation of Title 18, United States Code, Section 4." (emphasis added). The information contains the word "conceal" and tracks the exact language of the misprision of a felony statute, which provides:

> Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.

18 U.S.C.A. § 4. The court also included the element of an "act of concealment" when it recited the elements of misprision of a felony to Petitioner at his plea hearing, and Petitioner responded that he understood that these four elements had to be proven:

> **The Court**: Now, before you could be found guilty of this charge, the Government would have to present evidence to the court, to the jury, that four elements occurred. First, that a felony, a federal felony, was committed. Secondly, that you had knowledge of the commission of that felony. Third, that you failed to notify an authority as soon as possible. And fourth, that you committed an act, as charged, to conceal the crime.
>
> Are you aware that the Government would have to prove all four of those elements beyond a reasonable doubt before you could be found guilty?
>
> **The Defendant**: I am, Your Honor.

**The Court**: Do you have any questions about this charge?

**The Defendant**: No, sir, Your Honor.

Plea hearing transcript, pg. 7 (emphasis added).  Petitioner's argument that the information is deficient is without merit.  The court advised Petitioner of all of the elements of the crime, and all of the elements were contained in the information.

Furthermore, Petitioner's information claim is not properly before the court because the question of an insufficient information is not a "jurisdictional" issue that  "avoids the problem of procedural fault altogether."  In 2002, the United States Supreme Court in *United States v. Cotton* held that defects in an indictment are not "jurisdictional" issues.  535 U.S. 625, 630 (2002) ("defects in an indictment do not deprive a court of its power to adjudicate a case.").  The authority cited by Petitioner for the proposition that defects in an information affect the jurisdiction of the court pre-date the U.S. Supreme Court's 2002 decision in *Cotton.*  One case cited three times by Petitioner, *United States v. Meacham*, 626 F.2d 503 (5th Cir. 1980) was expressly overruled by the Fifth Circuit in *United States v. Cothran*, 302 F.3d 279, 283 (5th Cir. 2002).[13]  In *Cothran*, the Fifth Circuit, relying on *Cotton,* held that "defects in the indictment are not jurisdictional" and "standard waiver principles apply to defects in the indictment."  *Id.* at 283.  Several other Fifth Circuit cases acknowledge *Cotton* and hold that defects in an indictment are not "jurisdictional."  *See United States v. Daughenbaugh* 549 F.3d 1010, 1012 (5th Cir. 2008)

---

[13]The court adopts the sentiment expressed by the Seventh Circuit regarding the practice of citing overruled cases as authority:  "This court has every right to expect and does expect the highest degree of professional conduct from each and every attorney who appears before it. . . .Reliance on an overruled case manifests either incompetence, carelessness, or an attempt to mislead the court, any one of which falls far short of acceptable professional conduct."  *United States v. Santiago*, 826 F.2d 499, 502, n.1 (7th Cir. 1987).

(indictment omissions do not deprive court of jurisdiction); *United States v. Jacquez-Beltran,* 326 F.3d 661, 662 (5th Cir. 2003) (defects in indictment due to failure to allege element of offense are not jurisdictional); *United States v. Longoria*, 298 F.3d 367, 372 (5th Cir. 2002) (en banc) (*Cotton* holds defects in indictment do not deprive a court of power to adjudicate a case). As to issues of jurisdiction, there is no distinction between proceeding on a defective indictment and accepting a plea to a bill of information in the absence of an indictment. *See Daughenbaugh,* 549 F.3d at 1012-13 ("[A]ny error in the charging procedure here was non-jurisdictional and was therefore waived by Daughenbaugh's subsequent guilty plea.").

Petitioner also attacks the factual basis supporting his plea arguing that there is "no evidence of actual concealment" and "the Government never even alleged that Petitioner took an affirmative step to conceal the felony" and "Petitioner committed no such affirmative act." Petitioner cites *United States v. Johnson,* 546 F.2d 1225 (5th Cir. 1977), a case where the factual basis for a misprision of a felony guilty plea consisted solely of a statement that the defendant was aware of conversations between an undercover government agent and two others, but did not come forward and tell authorities of these conversations or transactions. The Fifth Circuit reversed on direct appeal and remanded the *Johnson* case to the district court, finding that the factual basis did not demonstrate that defendant took affirmative steps to conceal the crime of the principals.

The Fifth Circuit distinguished the case of *Johnson,* however, in *United States v. Davila,* 698 F.2d 715 (5th Cir. 1983), finding that there was a sufficient factual basis for a defendant's plea to misprision of a felony. In *Davila,* the defendant pleaded guilty to a one count bill of information charging him with misprision of a felony in exchange for the government dropping

charges against him for conspiracy to suborn perjury. On direct appeal, defendant claimed that there was an insufficient factual basis to support his plea. The factual basis in *Davila* stated that the defendant contacted and later met with a witness and offered the witness money to change the testimony he had given in a trial; defendant agreed to hold the money until the false testimony was given. The Fifth Circuit found:

> On the record the government has alleged an affirmative act - [defendant's] agreement to be the stakeholder for the payoff money - which manifestly goes beyond mere knowledge of the crime and failure to report it. Similar receipt or possession of evidence has regularly been considered a sufficient affirmative act to support conviction under the misprision statute. In *United States v. Gravitt*, for example, the defendant drove to the place where the fruits of a robbery were hidden and carried the money to his apartment to be divided. These actions were held to be affirmative acts adequate to support a conviction under the misprision statute. Possession of money stolen during a bank robbery was deemed a sufficient affirmative act in *United States v. King,* 402 F.2d 694 (9th Cir. 1968). So also was removal of stolen whiskey from a truck, replacement of the whiskey with sandbags, and then the driving of the truck to Arizona to divert suspicion from the original thieves. *United States v. Stuard,* 566 F.2d 1 (6th Cir. 1977).

The Fifth Circuit found in *Davila* that petitioner's act of being the stake-holder for the payoff money was an overt act of concealment, irrespective of the petitioner's participation in the original conspiracy, since the act of stakeholding itself was a separate act not necessary to the original conspiracy.

The factual basis supporting Petitioner's plea contains similar statements of Petitioner's "receipt of possession of evidence" and "stakeholding" that was deemed to be a sufficient affirmative act of concealment in *Davila*. The factual basis supporting Petitioner's plea states that after meeting with Richard Scruggs, Sid Backstrom, Steve Patterson, and Tim Balducci on

March 15, 2007 to discuss influencing Judge Lackey, Zach Scruggs twice received corrupt

orders from Tim Balducci.  On October 18, 2007, Tim Balducci left a signed order ruling in

favor of defendants with Zach Scruggs, and on November 1, 2007, Zach Scruggs and Sidney

Backstrom received a revised order delivered by Balducci and spent time examining the order

and discussing its contents.  Petitioner's factual basis furthermore states that "on November 5 an

email was sent via wire transmission in interstate commerce from the Scruggs Law Firm to Tim

Balducci containing documents related to the order sending the case to arbitration."  The

referenced email was from a paralegal in Petitioner's office forwarding a trial transcript in a

Hurricane Katrina insurance case.  By pleading guilty to a factual basis stating that the email was

really "related to the order sending the case to arbitration," Petitioner accepted responsibility for

this email and conceded that the email's intent to was to give a false impression, i.e., to conceal.

Petitioner's admission that this "Hurricane Katrina" email was really related to the *Lackey/Jones*

arbitration gives credence to the Government's position that the legal work assigned to Tim

Balducci on a Hurricane Katrina case was a mere sham to provide cover for the fact that Balducci

was really working on behalf of the Scruggs firm to corrupt Judge Lackey.  Lastly, it appears from

the language of the factual basis that the government's theory of Petitioner's "act of

concealment" is that Petitioner had a duty to inform opposing counsel in the Lackey/*Jones* case

that the arbitration order was obtained corruptly, yet he failed to disclose that information.  The

factual basis states that Petitioner "failed to inform [opposing counsel] of the manner in which

the order had been obtained, thereby **concealing** this fact from plaintiffs, whom the firm's

counsel would have been bound to inform." (emphasis added).   Multiple acts in the factual basis

for petitioner's plea, therefore, appear to satisfy the "act of concealment" element of a misprision of a felony crime.

Nevertheless, Petitioner cannot contest the sufficiency of the factual basis at this juncture. Arguments questioning the sufficiency of the evidence to sustain a conviction are not cognizable on a collateral motion under Section 2255. *Forrester v. United States*, 456 F.2d 905, 907 (5th Cir. 1972); *Mendoza v. United States*, 365 F.2d 268, 272 (5th Cir.1966). Though Petitioner argues that an insufficient factual basis deprives a court of jurisdiction and "avoids the problem of procedural default altogether," the only decisions Petitioner cites to support this position are decisions addressing the sufficiency of indictments, not factual bases, and as discussed *supra,* the indictment decisions cited are no longer good law in light of *Cotton.*

Petitioner's "jurisdictional" argument as it relates to the factual basis is foreclosed by *Bousley v. United States*, 523 U.S. 614, 622 (1998), a Section 2255 case that Petitioner has repeatedly relied on in his memorandums to this court. In *Bousley,* the petitioner also challenged the factual basis supporting his plea. The U.S. Supreme Court did not, as Petitioner contends, find that the petitioner's claim alleging an insufficient factual basis was exempt from the procedural default rule. Instead, the Court found that the petitioner had procedurally defaulted on the claim and that he was required to show cause and prejudice or his actual innocence to overcome the procedural bar. *Id.* The Fifth Circuit has likewise held that claims alleging an insufficient factual basis in a Section 2255 proceeding are subject to the rules of procedural default. In *United States v. Jones*, 172 F.3d 381 (5th Cir. 1999) and *United States v. Torres,* 163 F.3d 909, 911 (5th Cir.1999), petitioners argued that the factual bases supporting their convictions were insufficient. In both cases, the Fifth Circuit found that the petitioners had

procedurally defaulted on their claims because they did not raise them on direct appeal and that they were required to show cause and prejudice or prove their actual innocence in order to overcome the procedural default.

Petitioner's arguments regarding the information and factual basis are, in essence, claims that the court failed to comply with Federal Rule of Criminal Procedure 11, which requires the court to address the defendant who is taking a plea and determine that the defendant understands "the nature of each charge to which [he] is pleading," Rule 11(b)(1)(G), and "determine that there is a factual basis for the plea," Rule 11(b)(3). The U.S. Supreme Court has stated that "[a] defendant will rarely, if ever, be able to obtain relief for Rule 11 violations under § 2255." *United States v. Dominguez Benitez,* 542 U.S. 74, 83 (2004). The Fifth Circuit has likewise held that a failure to comply with the formal requirements of Rule 11 is not jurisdictional and can and should be raised on direct appeal. *United States v. Prince,* 868 F.2d 1379, 1385 (5th Cir.), cert. denied**,** 493 U.S. 932 (1989); *United States v. Porter,* 68 F.3d 468 (5th Cir.1995).

Petitioner's claims regarding the information and factual basis are claims that could have been fully and completely addressed on direct review based on the record created at the plea colloquy where Petitioner had a former United States Attorney, a former Assistant United States Attorney, and a former Attorney General of Mississippi standing before the court with him.[14] Petitioner procedurally defaulted on these claims by making no contemporaneous objections to the information or factual basis during his plea hearing and by filing no direct appeal. A defendant who raises an issue for the first time on collateral review must show (1) "cause" for

---

[14]It should be noted that three of Petitioner's present attorneys were also his attorneys during the original proceedings.

his procedural default, and "actual prejudice" resulting from the error, or (2) that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *United States v. Shaid,* 937 F.2d 228, 232 (5th Cir.1991) (en banc) (citation omitted), *cert. denied,* 502 U.S. 1076 (1992). Petitioner relies solely on his "jurisdictional" arguments and has not submitted an argument to the court to overcome procedural default. Petitioner is therefore procedurally barred from attacking his conviction on grounds that the information and factual basis were insufficient.

These claims are furthermore barred by the one-year statute of limitations for Section 2255 motions. 28 U.S.C.A. §2255(f)(1-4). In the absence of a new right recognized by the U.S. Supreme Court that is retroactive to cases on collateral review, an impediment to filing the motion created by government action, or new facts discovered through due diligence, the statute of limitations for the information and factual basis claims began to run from the date on which Petitioner's judgment of conviction became final. *Id.* Because he pursued no direct appeal, Petitioner's conviction and sentence became final for purposes of § 2255 upon the expiration of the ten-day period for filing a direct appeal. *United States v. Plascencia*, 537 F.3d 385, 388 (5th Cir. 2008). Petitioner was sentenced on July 2, 2008, his deadline for filing a direct appeal was July 14, 2008, and the information and factual basis claims he now raises were required to be filed by July 14, 2009, in order to be timely under Section 2255's one-year statute of limitations. Petitioner filed his Section 2255 motion on August 18, 2010, and first raised the claims regarding the information and factual basis in a footnote in his November 9, 2010, Section 2255 reply memorandum and again in a Bench Memorandum filed March 14, 2011. These claims are untimely and cannot be heard.

<u>Entrapment</u>

Entrapment is a non-jurisdictional defense on the merits that was waived by Petitioner's guilty plea. *United States v. Sarmiento,* 786 F.2d 665 (5th Cir. 1986)("Entrapment, a defense on the merits, was waived by the guilty plea."); *United States v. Yater,* 756 F.2d 1058, 1063 (5th Cir.), *cert. denied,* 474 U.S. 901 (1985) ("Appellant entered a guilty plea, which effectively waived his right to the defense of entrapment.").  The defense of entrapment furthermore must be raised at trial and may not be raised by collateral attack under a motion filed pursuant to 28 U.S.C.A. § 2255.  In *Moore v. United States*, the Fifth Circuit stated:

> May claimed unlawful entrapment be raised by a Section 2255
> Motion, or is it merely a matter of defense, which must be raised at
> trial?  We conclude the latter view adopted by the trial court, is the
> correct one . . . . The attempt to raise entrapment comes too late,
> when, as here, it is sought to be raised by collateral attack under
> Section 2255 Motion.

334 F.2d 25, 27 (5th Cir. 1964).  Entrapment is an affirmative defense that Petitioner could have raised had he proceeded to trial and that he could have raised on direct appeal.  It cannot be raised collaterally.  Allegations which could have been raised on direct appeal may not be asserted on collateral review in a § 2255 motion. *United States v. Capua,* 656 F.2d 1033, 1037 (5th Cir.1981).

Petitioner first raised the issue of entrapment by way of a footnote in his memorandum supporting his Section 2255 motion and again in his summary judgment motion.  A defendant who raises an issue for the first time on collateral review must show (1) "cause" for his procedural default, and "actual prejudice" resulting from the error, or (2) that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Shaid*, 937

F.2d at 232. Petitioner has not submitted an argument to the court to overcome procedural default of his entrapment claim, and the claim is thus barred under the procedural default rule.

Petitioner's entrapment argument is furthermore barred by the one-year statute of limitations. Petitioner bases his entrapment argument on a September 18, 2007 recorded telephone call between Judge Henry Lackey and Timothy Balducci, testimony heard in a February 20, 2008 motion hearing before this court, and testimony heard in the Lafayette County Circuit Court by Judge William F. Coleman on April 15, 2008. Petitioner's entrapment argument does not rest upon a new right established by the U.S. Supreme Court retroactive to collateral cases, facts recently discovered through due diligence, or the removal of an impediment to filing his 2255 motion created by government action. 28 U.S.C.A. §2255(f)(1-4). Therefore, the statute of limitations for Petitioner's entrapment claim, even if it were cognizable in a Section 2255 action, began to run from the date on which Petitioner's judgment of conviction became final, or July 14, 2008. Petitioner filed his Section 2255 motion and raised the issue of entrapment in a footnote in his supporting memorandum on August 18, 2010, nearly two years later, and the claim is barred as untimely.

<u>Federal Programs Bribery under 18 U.S.C. § 666</u>

The original indictment in this case charged Petitioner with violating 18 U.S.C. § 666, which penalizes bribery of an agent of any organization receiving federal funds in excess of $10,000 a year. The Government asserted that Judge Lackey, as a Mississippi circuit court judge, was "an agent of a subdivision of the judicial branch of the state government of Mississippi, which received benefits in excess of $10,000 in any one-year period for each of the years 2006 and 2007, from federal programs . . . ."

25

The Fifth Circuit addressed this issue in *United States v. Whitfield*, 590 F.3d 325 (5ᵗʰ Cir. 2009). In that case the Government claimed that two of the defendants, former Mississippi state court judges, were agents of Mississippi's Administrative Office of Courts (AOC), a state agency which received over $10,000 per year in federal funding in the years the defendants served as judges. *Id.* at 344. The jury found that the defendants were agents of the AOC for purposes of Section 666, and the defendants appealed.

Addressing the question on appeal, the Fifth Circuit noted that "so long as there is a 'nexus between the criminal conduct and the agency,' the lack of a direct connection between the AOC funds under the judges' control and the federal funds in question does not preclude [the judges] from being considered agents of the AOC for the purposes of Section 666." *Id.* at 345 (quoting *United States v. Moeller*, 987 F.2d 1134, 1137 (5ᵗʰ Cir. 1993)). The court found that, in certain aspects, the judges were authorized "to act on behalf of [the AOC] with respect to its funds." *Id.* The court therefore assumed, "*arguendo*, that Whitfield and Teel were agents of the AOC, *but only in so far as they performed functions that involved AOC funds*." *Id.* Finding that "the purpose of the AOC is to 'assist in the efficient administration of the *nonjudicial* business of the courts of the state,'[15]" the court ultimately held that "[a] review of the record in this case makes clear that, insofar as Whitfield and Teel may have been agents of the AOC, their role as such had nothing to do with their capacity as judicial decisionmakers." *Id.* at 346. The court stated that the judges' roles in presiding over the court cases related to the bribery scheme "involved the *judicial* business of the Mississippi courts" and "had no 'connection with any

---

[15]Miss. Code Ann. § 9-21-1.

business, transaction, or series of transactions' of the AOC." *Id.* (citing 18 U.S.C. § 666(a)(1)(B)).

In the present case, the Government charged Petitioner with federal program bribery to "influence and reward Henry L. Lackey in connection with the [Lafayette County] Circuit Court case styled *Jones, et al. v. Scruggs, et al.*, Civil Action No. L07-135," thereby specifically alleging business and transactions that "involved the judicial business of the Mississippi courts." *Id.* at 346. In light of *Whitfield*, the necessary "nexus between the criminal conduct and the agency," the AOC, is lacking. *See Moeller*, 987 at 1137.

The Government advised the court at a May 9, 2011 hearing on another motion in this case of its position in regard to the Section 666 charges – that is, that Petitioner's argument as to Section 666 is one of "technical" or "legal innocence," not "actual innocence," as required by *Bousley* and its progeny. The court finds that the Government has waived its argument on this matter. Although the Government stated its position at the aforementioned hearing, its response to Petitioner's motion for summary judgment is silent on the issue. "If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal." *Keelan v Majesco Software, Inc.*, 407 F.3d 332, 339 (5th Cir. 2005). *See also Gilbert v. Outback Steakhouse of Florida, Inc.*, 295 Fed. Appx. 710, 715 (5th Cir. 2008) (arguments not raised in response to defendant's summary judgment motion are waived).

The court also finds this argument lacking in merit. In light of the Fifth Circuit's opinion in *Whitfield*, the court finds that no reasonable juror, properly instructed, could find Petitioner guilty of these charges. Contrary to the Government's assertion, this is "actual innocence" under

*Bousley*. "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623. At this point, a properly instructed jury would have to be instructed in accordance with *Whitfield*.

For these reasons, Petitioner's motion is well taken on the Section 666 federal program bribery issues. Petitioner has met his burden to show actual innocence of Counts Two, Three, and Four, which are based upon Section 666, as well as actual innocence of conspiracy to commit federal program bribery under Section 666 found in Count One, though Count One as it pertains to conspiracy to commit honest services fraud remains viable, as questions of fact remain on that charge. Petitioner's summary judgment motion will be granted in his favor as to all Section 666 charges.

Conclusion

In accordance with the foregoing analysis, Petitioner's motion for summary judgment shall be granted in part and denied in part. The motion for summary judgment is granted as to Counts Two, Three, and Four and the portion of Count One which concerns Title 18 U.S.C. § 666. Petitioner has met his burden as to those Counts. Petitioner's claim of entrapment and lack of jurisdiction of the court to accept his guilty plea are dismissed.

The claims to be heard at the Section 2255 motion hearing are as follows:

(1) actual innocence pursuant to *Skilling v. United States* including, but not limited to

        (a) knowledge of payment to Judge Lackey;

(b) intent of defendants with regard to the nature of payment, i.e., whether

payment was a bribe or gratuity;

(2) involuntary plea due to alleged government misrepresentations;

(3) conspiracy to commit "honest services" fraud; and

(4) ineffective assistance of counsel.

A separate order in accord with this opinion shall issue this day.

This, the 13th day of May, 2011.

/s/ Neal Biggers

**NEAL B. BIGGERS, JR.**
**UNITED STATES DISTRICT JUDGE**